UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:19-cv-00983-LCB-JLW

| | |
|---|---|
| AMY HILL, DOMINIQUE MORRISON, SARA HAWES, CASSANDRA CHIARALUCE, and JONATHAN FONTAINE individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AQ TEXTILES LLC and CREATIVE TEXTILE MILLS PVT. LTD.,<br><br>Defendants. | **AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Amy Hill, Dominique Morrison, Sara Hawes, Cassandra Chiaraluce, and Jonathan Fontaine ("Plaintiffs") bring this action on their own behalf and on behalf of putative classes (the "Classes") consisting of Plaintiffs and all others similarly situated, against AQ Textiles LLC ("AQ Textiles"), and Creative Textile Mills Pvt. Ltd. ("Creative Textiles" ) (together "Defendants"). All allegations herein are based on information and belief, except for those paragraphs pertaining to Plaintiffs' own actions, which are alleged based on personal knowledge.

## INTRODUCTION

1.     Plaintiffs bring this action on their own behalf and on behalf of the Classes consisting of Plaintiff and all others similarly situated to redress Defendants' deceptive acts and unconscionable business practices designed to deceive and mislead consumers into believing that Defendants' bedding and linen products had higher thread counts than they really have and as such were of better quality, softer and more comfortable for

sleeping than products with lesser thread counts.

2.      In purchasing bedding and linen products, Plaintiffs and the Classes received less than what was promised by Defendants due to the improperly inflated thread counts represented on bedding and linen labels sold and marketed by Defendants throughout the United States and the State of North Carolina.

3.      Members of the bedding and linen products industry including the Defendants and retailers consistently communicate to consumers that higher thread count sheets are of better quality, softer, and more comfortable for sleeping.

4.      As a result, consumers purchasing bedding and linen products use thread count as a primary indicator of the quality of the sheets offered for sale and pay higher prices for higher thread count bedsheets and linens.

5.      As part of a scheme to make their bedding and linen products more attractive, boost sales, and increase profits, Defendants departed from well-established and long-standing industry standards governing the calculation and advertisement of thread counts  and inflated the thread counts on the labels of the products it marketed, distributed and/or sold through their agents and North Carolina retail partners.

6.      Defendants misrepresented, and continue to misrepresent, the thread count and the corresponding actual quality, durability, longevity, fitness, softness, comfort and other characteristics associated with sheets or linen products of that thread count in many of the bedding and linen products they advertise, market, and distribute throughout the country, resulting in the sale of bedding and linen products represented to have greater than their true thread counts to consumers throughout the United States.

7. The representation of the false and misleading thread count also deceives and misleads consumers into believing that they are purchasing a product which is of higher quality, softness and is better for sleeping than products with a lower thread count.

8. Defendants knowingly departed from following well accepted and known industry standards for calculating thread counts, and thereby inflated thread counts to market, advertise, package, and sell their bedding and linen products through their agents and retail partners throughout the United States and North Carolina.

9. Inaccurate thread counts create reasonable but mistaken beliefs by consumers about the quality of bedding and linen products.

10. For example, reasonable consumers believe that a bedding package label stating that it contains 800 thread-count bedding actually contains bedding with a thread count calculated at 800 according to an honest and consistent industry standard.

11. Likewise, consumers believe that a 800 thread-count bedding is going to be of higher quality, softer and better for sleep than a lower thread-count bedding.

12. Consumers rely on Defendants' representations and advertising as they compare and assess products and make purchase decisions.

13. As a direct result of Defendants' improper, deceptive, and unconscionable scheme to misrepresent bedding and line thread counts, Plaintiffs and other Class members suffered damages because the inflated thread counts induced Plaintiffs and other members of the Class to purchase Defendants' products when Plaintiffs and other members of the Class would not have purchased them, or would have paid a lower price for the products if they had known the actual thread counts at the time of purchase.

## JURISDICTION AND VENUE

14.     The foregoing allegations are incorporated by reference and realleged herein.

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states.   This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

17.     Defendant AQ Textiles is a North Carolina LLC with it principal place of business and registered offices located in Greensboro, North Carolina 27410.

18.     Defendants' improper conduct set forth herein occurred in this District or was conceived of and executed from this District in whole or in part.

19.     Defendants' decisions to engage in the improper conduct set forth herein were made in this District.

20.     Further, Defendants' bedding and linen products at issue were advertised, marketed, sold and/or distributed in this District.

21.     Creative Textiles has admitted that it and AQ Textiles share "a contractual

relationship."[1]

22.  According to Creative's Supply Chain Summary from November 9, 2017 to November 9, 2018, Creative's "Top Importer" was AQ.[2]

23.  According to AQ's Supply Chain Summary from November 9, 2017 to November 9, 2018, AQ's "Top Supplier" was Creative.[3]

24.  An AQ bill of lading report dated December 6, 2018, as recorded by U.S. Customs, shows that AQ imported from Creative 2893 cartons of cotton woven bed sheets.[4]   The listed "Consignee" for the shipment is "Aq Textiles Llc."[5]

25.  The harm alleged herein occurred in this District or emanated from Defendants' improper conduct that occurred in this District, in whole or in part.

## PARTIES

26.  The foregoing allegations are incorporated by reference and realleged herein.

27.  Plaintiff Amy Hill is a resident of the City of St. Louis, Missouri and a citizen of Missouri.

28.  Ms. Hill purchased Fairfield Square 1000TC Luxury Sateen sheets from a Macy's store located in St. Louis County, MO.

---

[1] *Adam v. TJX*, 17-cv-11260 (D. Mass.) ECF No. 82 at ¶ 9 (Declaration of Agarwal ("Agarwal Decl.").

[2] Descartes Datamyne Trade Report, http://www.datamyne.com/supplier/6192388/creative-textile-mills-pvt-ltd (last visited December 12, 2019).

[3] Descartes Datamyne Trade Report, http://www.datamyne.com/importer/6774638/aq-textiles-llc (last visited December 12, 2019).

[4] Panjiva Shipping Information, https://panjiva.com/Aq-Textiles-LLC/32406626 (last visited Dec. 12, 2019).

[5] *Id.*

29.     She believes she made the purchase in summer or fall of 2016. The sheets were manufactured by Defendant Creative Textiles and labeled by Defendant AQ Textiles.

30.     Plaintiff Hill reasonably believed that the sheets she purchased were in fact of 1000 thread count, and she was deceived by the false label because the sheets' thread count was in fact far less.

31.     Plaintiff Hill relied on the thread count representations on the packaging when purchasing these sheets and believed that the sheets were of higher quality, softer, and better for sleeping than sheets with lower thread counts.

32.     Plaintiff Dominique Morrison is an adult citizen of St. Louis County, Missouri.

33.     Ms. Morrison purchased Grande Estate 800TC Luxurious Sateen Weave sheets during the Class Period from a Ross store located in St. Louis, Missouri.

34.     The sheets were manufactured by Defendant Creative Textiles, labeled by Defendant AQ Textiles, and represented to be 800 thread count.

35.     Plaintiffs relied on the thread count representations on the packaging when purchasing these sheets and believed that she was purchasing sheets with 800 thread count and that the sheets were of higher quality, more durable, softer and better for sleep than sheets with lower thread counts.

36.     Plaintiff Sara Hawes is an adult citizen of California.

37.     In or around May 2017, Ms. Hawes purchased a Somerset Collection brand queen-size sheet set, manufactured by Defendant Creative Textiles for and distributed by

Defendant AQ Textiles and represented to be "900 Thread Count," from a Macy's retail store located at 8500 Beverly Blvd. in Los Angeles, California.

38.     Ms. Hawes relied on the thread count representations on the packaging when purchasing these sheets and believed that she was purchasing sheets with a 900 thread count and that the sheets were of higher quality, softer and better for sleep than sheets with lower thread counts.

39.     Ms. Hawes paid $76.11 ($69.99 plus tax) for this sheet set.

40.     Plaintiff Cassandra Chiaraluce is an adult citizen of Massachusetts.

41.     In or around October 2017, Ms. Chiaraluce purchased a Bradford Stay Fit brand queen-size sheet set, manufactured by Defendant Creative Textiles, for and distributed by Defendant AQ Textiles and represented to be "800 Thread Count" from a Macy's retail store located at 85 Rockingham Park Blvd. in Salem, New Hampshire. This was the closest store to her residence in Massachusetts.

42.     Ms. Chiaraluce relied on the thread count representations on the packaging when purchasing these sheets and believed that she was purchasing sheets with an 800 thread count and that the sheets were of higher quality, softer and better for sleep than sheets with lower thread counts.

43.     Ms. Chiaraluce paid $69.99 for this sheet set.

44.     Plaintiff Jonathan Fontaine is an adult citizen of Massachusetts.

45.     In or around October 2017, Mr. Fontaine purchased a Fairfield Square Essex Stay Fit brand queen-size sheet set, manufactured by Defendant Creative Textiles for and distributed by Defendant AQ Textiles and represented to be "1200 Thread

Count," from a Macy's retail store located at 75 Middlesex Turnpike in Burlington, MA.

46.    Mr. Fontaine relied on the thread count representations on the packaging when purchasing these sheets and believed that he was purchasing sheets with a 1200 thread count and that the sheets were of higher quality, softer and better for sleep than sheets with lower thread counts.

47.    Mr. Fontaine paid $84.99 ($79.99 plus tax) for this sheet set.

48.    Defendant AQ Textiles is a North Carolina LLC with it principal place of business and registered offices located at 214 Staunton Drive, Greensboro, North Carolina 27410.

49.    Defendant AQ Textiles, on behalf of Creative Textiles, imports and distributes the relevant sheet and bedding products.

50.    Defendant Creative Textiles is a private limited company organized under the laws of the Republic of India, with its primary place of business at 212, Cama Industrial Estate, Sun Mill Compound Mumbai, Maharashtra 400013 India.

51.    Defendant Creative Textiles manufactures and sells textiles, including the relevant sheets and bedding products, throughout the United States through its contractual partner, AQ.

52.    According to Creative's Supply Chain Summary from November 9, 2017 to November 9, 2018, Creative's "Top Importer" was AQ.  According to AQ's Supply Chain Summary from November 9, 2017 to November 9, 2018, AQ's "Top Supplier" was Creative.  An AQ bill of lading report dated December 6, 2018, as recorded by U.S. Customs, shows that AQ imported from Creative 2893 cartons of cotton woven bed

sheets.

53.     The listed "Consignee" for the shipment is "Aq Textiles Llc."  *See*

Descartes Datamyne Trade Report,

http://www.datamyne.com/supplier/6192388/creative-textile-mills-pvt-ltd (last visited

December 12, 2019); Descartes Datamyne Trade Report,

http://www.datamyne.com/importer/6774638/aq-textiles-llc (last visited Dec. 12, 2019);

Panjiva Shipping Information, https://panjiva.com/Aq-Textiles-LLC/32406626 (last

visited Dec. 12, 2019).

## FACTUAL ALLEGATIONS

54.     The foregoing allegations are incorporated by reference and realleged

herein.

55.     For consumers purchasing bedding and linens, thread count is used as an

indicator of fabric quality and a basis on which they make purchasing decisions.

56.     As the thread count increases, so does the price that consumers are willing

to pay for bedding and linens.

57.     The sheets and bed linens at issue were manufactured by Creative Textiles

and imported, labeled, and sold by AQ Textiles to retail partners such as Macys,

Walmart, Kmart, Bed Bath & Beyond, Target.TJ Maxx, Ross and other retailers and

merchants under multiple brand names.

58.     Other affected sheets and bed linens sold at retailers across the United

States, include among others, the following products:

- Bradford Stay Fit Queen 800 Thread Count - Macy's;

- Fairfield Square Essex Stay Fit Queen 1200 Thread Count - Macy's;

- Fairfield Square BainBridge Collection Queen 1400 Thread Count - Macy's;

- Sterling Manor Luxury Sateen Weave 700 Thread Count - TJ Maxx;

- Ultra Lux Luxury Sateen Weave 800 Thread Count - TJ Maxx;

- Designer Workshop 600 Thread Count - Kmart;

- Luxury Sateen 1000 Thread Count - Kmart;

- Dayton Collection Sateen Queen 400 Thread Count - TJ Maxx;

- Luxury Sateen 530 Thread Count, Ashford Collection - Macys;

- Hotel Collection 800 Thread Count - Macy's;

- Charter Club Allure 2 Pillowcase 600 Thread Count - Macy's;

- Fieldcrest 700 Thread Count Supima Classic Hemstitch Queen - Target;

- UltraLux Wrinkle Resistant Luxury Sateen Weave Queen 1200 Thread Count - TJ Maxx;

- SOHOME Studio Queen 400 Thread Count - TJ Maxx; and

- Park Avenue Queen 350 Thread Count - TJ Maxx.

59.     The affected sheets and bed linens, including the products purchased by Plaintiffs, are also offered regularly for sale and are sold via the internet through retailers' websites such as Better Home and Gardens, Ebay, ShopSyle, and PeopleShop.

60.     Macy's website prominently features AQ Textiles' products, listing AQ Textiles first in the bed sheets by brand category.  Furthermore, Macys.com sells more AQ Textiles bedsheets than any other sheet manufacturer.[6]

---

[6] *See*: https://www.macys.com/shop/bed-bath/bed-sheets?id=9915&edge=hybrid;

61. For consumers purchasing bedding and linens, thread count is used as an indicator of fabric quality and a basis on which they make purchasing decisions.

62. As the thread count increases, so does the price that consumers are willing to pay for bedding and linens.

63. Industry participants at each level of the supply chain, including Defendants, know that consumers will pay higher prices for linens and bedding products with a higher thread count and as such increase the price as the thread counts on the products increase.

64. This includes manufacturers such as Defendant Creative Textiles, and distributors/importers such as Defendant AQ Textiles.

65. Consumers rely on represented thread count as the gauge for the quality of their bedding and linen products. *See,* ABC News, Are Shoppers Short-Sheeted by

https://www.macys.com/shop/product/aq-textile-marlow-4-pc.-sheet-sets-1800-thread-count-cotton-blend?ID=4987162&cm_mmc=MSN_Bing_Home_BedBath_Text-_-DSA-BedBath_Pillows-_-81707497369272-_-81707497369272_c__kclickid_d6c08a72-0871-4c2a-86f0-a8567685a44c&trackingid=444x797723;
https://www.walmart.com/search/?query=aq+textiles+sheets&&adid=22222222224395273416&wmlspartner=wmtlabs&wl0=e&wl1=o&wl2=c&wl3=74698142942152&wl4=kwd-74698222629257:loc-190&wl5=62631&wl6=&wl7={loc_interest_ms%20}&wl14=aq%20textiles%20sheets&veh=sem&msclkid=a3241b91459817cc070e47992fe9ae35;
https://www.bhg.com/shop/bed-and-bath/bedding/bed-sheets/aq-textiles-ba2238.html;
https://www.ebay.com/sch/i.html?_nkw=aq+textiles&ul_noapp=true;
https://www.shopstyle.com/browse?fts=aq+textiles&jcpid=8a8ae4cd48a691430148b3d515f53e61&jkId=mcp:se_34899:t_kwd-30617500504:loc-190:ag_2054298592:cp_31238978:n_s:d_c:cr_77653038478168:sfsl_&js=3&jsid=34899&jt=1&utm_campaign=AQ+Textiles&utm_content=%7Bcreative%7D&utm_id=t_kwd-30617500504:loc-190:ag_2054298592:cp_31238978:d_c&utm_medium=PPC&utm_source=bing&utm_term=+aq++textiles;
https://people.com/shop/aq-textiles-aq-textiles-grayson-4-pc-california-king-sheet-set-950-thread-count-cotton-blend-blue-pb63879f27bdd2bae38ae2caec81d0ebc.html.

Thread Count?, November 14, 2016, *available at http://abcnews.go.com/GMA/ story?id=125380&page=1* ("Consumers who enjoy slipping under top-quality bed sheets rely on thread count as a gauge while shopping….").

66.     Consumers pay more for higher thread count sheets. *Id.* ("A single-ply 300-count can run about $55 a set, while the 600 thread-count sheets that [tested as] only a 300-count is $180 a set.").

67.     An informal survey of the prices of cotton king-size bedding sets at online retailers in December 2016 showed that as thread count increased, so did the price for the bedding.



68.     The common or standard practice in the U.S. bedding and linen industry has been to count the number of threads in both the warp (vertical direction) and filling (horizontal direction).  Common or standard practice counts each yarn as one thread,

regardless of whether the yarn was a single-ply or multi-ply yarn.

69. The American Society for Testing and Materials' ("ASTM") Standard Test Method for Warp (End) Count and Filling (Pick) Count of Woven Fabric, Designation: D3775-12, covers the standard test method for measuring warp end count and filling pick count and is applicable to all types of woven fabric.

70. Section 9.1.1 of D3775-12 instructs on the appropriate method for determining thread count: "Count individual warp ends and filling picks as single units regardless of whether they are comprised of single or plied components."

71. The terms relevant to ASTM D3775-12, and related to textiles, are defined by ASTM Designation: D123-03. *See* Section 3, Terminology of ASTM D3775-123. These terms, among others, include:

a.  **count,** *n − in woven textiles*, the number of warp yarns (ends) and filling yarns (picks) per unit distance as counted while the fabric is held under zero tension, and is free of folds and wrinkles.

b.  **end,** *n − in fabric*, an individual warp yarn (single or ply) or cord.

c.  **filling,** *n −* yarn running from selvage to selvage at right angles to the warp in a woven fabric.

d.  **pick,** *n −* an individual filling yarn.

e.  **pick count,** *n − in woven fabrics*, the number of filling yarns per unit fabric length.

*See,* ASTM D 123-03, Standard Terminology Relating to Textiles.

72.     The prior versions of ASTM D3775, going back at least to 2003, included the same instructions for proper counting under the standard.

73.     ASTM, Standard Test Method for Warp End Count and Filling Pick Count of Woven Fabric, Designation: D3775-03a, Section 9.1.4 instructs, "Count individual warp yarns (ends) and filling yarns (picks) as single units regardless of whether they are comprised of single or plied components."

74.     Per ASTM D3775-12 § 9.1.4, the standard deviation of the samples tested, should be 5% or less.

75.     In other words, the stated thread count should be within 5% of the actual thread count.

76.     However, some bedding and linen manufacturers and distributors, such as Defendants, are not adhering to the standard-based, traditional, and common industry practice.  These manufacturers and retailers double or triple the true thread count by counting plied yarns individually.

77.     According to the National Textiles Association ("NTA") and the Federal Trade Commission ("FTC"), this practice of determining thread count by counting plied yarns individually "inflates the thread count numbers to levels which double or triple (or more) the thread count as determined by the long standing, traditional way.

78.     This practice has also created confusion in the marketplace and has caused consumers to compare thread counts that may have been calculated in two dramatically different ways."  *See* FTC Letter to National Textile Association, August 2, 2005, Ex. B.

79.     In its Letter to the National Textile Association, the FTC stated that:

> [C]onsumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn.  A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example: '300 thread count, 2 ply yarn.'  A representation of '600 thread count' for this same product would likely mislead consumers about the quality of the product being purchased."

80.     The practice of counting the plies that make up each thread was also condemned by the American Textile Manufacturer's Institute ("ATMI").

81.     In a letter sent to the FTC on January 31, 2002, Ex. C, ATMI addressed marketing of bed sheets and pillowcases to consumers with claims of extremely high yarn or thread count claims, stating that:

> Labeling these products based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better, when, in fact, they might be inferior because of the method used to determine the count.
>
> …
>
> In many cases, these extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric.  A plied yarn is one in which two or more yarns are twisted together to form a single strand.
>
> ATMI believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American public into making purchasing decisions to purchase items, based on false and misleading information.
>
> ASTM method D 3775-96 (Standard Test Method for Fabric Count of Woven Fabric) [a prior version of D3775-12] the long-accepted industry standard for determining count.  This method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile fabrics, including sheeting.  It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product.
>
> ATMI believes that any information provided to the consumer

should be true and correct so as not to be deceptive or misleading. We believe that plied yarns are properly counted as only one yarn. For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a "250 thread count fabric, even though each thread or yarn contained four plies twisted together." It would be false and misleading to describe this as a 1000 thread count product.

82.     The FTC's reply letter to ATMI, dated March 18, 2002, advised how the Commission's staff would analyze claims that counting yarns within a ply as individual yarns to determine thread count was a deceptive practice. *See* Ex. D.

83.     The FTC advised that where ASTM standards existed, the Commission would give great weight to the applicable standards to determine if product claims were reasonable or deceptive:

A thread count claim, like other objective, material claims about a product, must be supported by a "reasonable basis." In determining what constitutes a reasonable basis for claims, we would consider what experts in the field believe is appropriate, including whether there are relevant consensus based test procedures, such as an ASTM test procedure, or other widely accepted industry practices that apply to the matter. If so, we would give such procedure or practices great weight in determining whether the advertiser has met its substantiation burden. In other related context, the Commission has encouraged the use of ASTM tests. *See* Press Release, FTC Announces Actions on Wool Labeling Rules, dated March 8, 1994 (copy attached) ("In its clarification of the procedure used for testing the fiber content of wool products, the FTC said the industry members should, where possible, use procedures established by the American Society for Testing and Materials (ASTM).").

84.     Despite these long-standing industry standards for calculating thread counts, and the likelihood that deviating from the standards would mislead and deceive consumers, Defendants manufactured, marketed, advertised, sold and/or distributed bedding and linen products with inflated thread counts.

85.     The bedding and linen products at issue are therefore inherently defective and not fit for their intended use as high quality luxury sheets and bedding because as a result of the lower thread count, the sheets are of lower quality, softness, comfort,

durability, and longevity than they otherwise would if they were the represented thread count and quality as stated on the labeling and price tags.

86. Defendants directed their agents and retail partners, such as Macy's, to represent that numerous bedding and linen products were of a certain thread count, but when measured in accordance with industry standards, these thread counts were far less than claimed because Defendants improperly counted.

87. Defendants represented that numerous bedding and linen products were of a certain thread count, but when measured in accordance with industry standards, these thread counts were far less than claimed because Defendants improperly counted the plies making up the threads in their linens rather than the threads themselves.

88. Defendant Creative Textiles, on information and belief, knowingly manufactured and packaged its products with inflated thread counts in order to win business or command higher prices.

89. Defendant AQ Textiles, on information and belief, participated in developing the labeling with inflated thread counts, and either knew or should have known that the advertised thread counts were false.

90. Plaintiffs purchased sheets, imported by Defendant AQ Textiles and manufactured by Defendant Creative Textiles, which was represented to be higher thread counts than they were.

91. Defendants made false representations as to the thread count of their sheets and bedding products on the products' packaging, on their retailer's websites, including Macy's.com, as well as in their retailer's stores, including the retail Macy's stores

stocked with the relevant goods in the State of California, North Carolina and throughout the United States.

92. Defendants' representations regarding the thread counts of their bedding and linen products were deceptive and misleading according to both the industry standard and the FTC's guidelines for accurately describing thread counts.

93. By improperly inflating thread counts contrary to industry standards, Defendants have engaged in, and continue to engage in, practices which are unconscionable, deceptive, and fraudulent, and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in their manufacturing, advertising, marketing, selling, and distribution of bedding and linen products.

94. As a direct and proximate result of Defendants' improper conduct, Plaintiffs and Class Members paid more for bedding and linen products which Defendants represented had inflated thread counts.

95. By representing that their products had higher thread counts than they actually had, Defendants unjustly profited from the sale of such bedding and linen products to consumers.

96. The inflated thread counts put forth by Defendants in their products induced Plaintiffs and other Class Members to purchase their products when Plaintiffs and other Class Members would not have purchased them, or would only have paid a lower price for the product if they had known the actual thread counts at the time of

purchase.

## CLASS ACTION ALLEGATIONS

97.     The foregoing allegations are incorporated by reference and realleged herein.

98.     Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and may seek to certify one or more of the following Classes:

**Nationwide Class:**

All persons in the United States that purchased bedding or linen manufactured, distributed, or labeled by Defendants for personal, family, or household purposes that Defendants represented as having thread counts higher than the bedding or linen's actual thread counts.

**Missouri Class:**

All persons in the State of Missouri that purchased bedding or linen manufactured, distributed, or labeled by Defendants for personal, family, or household purposes that Defendants represented as having thread counts higher than the bedding or linen's actual thread counts.

**North Carolina Class:**

All persons in the State of North Carolina that purchased bedding or linen manufactured, distributed, or labeled by Defendants for personal, family, or household purposes that Defendants represented as having thread counts higher than the bedding or linen's actual thread counts.

**California Class:**

All persons in the State of California that purchased bedding or linen manufactured, distributed, or labeled by Defendants for personal, family, or household purposes that Defendants represented as having thread counts higher than the bedding or linen's actual thread counts.

**Massachusetts Class:**

All persons in the Commonwealth of Massachusetts that purchased bedding or linen manufactured, distributed, or labeled by Defendants for personal, family, or household purposes that Defendants represented as having thread counts higher than the bedding or linen's actual thread counts.

**New Hampshire Class:**

All persons in the State of New Hampshire that purchased bedding or linen manufactured, distributed, or labeled by Defendants for personal, family, or household purposes that Defendants represented as having thread counts higher than the bedding or linen's actual thread counts.

99.     The class period commences on the first date that Defendants manufactured, marketed, advertised, sold and/or distributed the offending bedding and linen products and ending on the date that the Court certifies this suit as a class action.

100.    Excluded from the Classes (and in the alternative, the Subclasses defined below) are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants.

101.    Defendants' policy and practice of inflating thread counts and misrepresenting thread counts to consumers has affected all Class Members. As such, there are many common questions of law and fact among Plaintiffs and the Class Members, which predominate over questions affecting individual Class members. Common questions include, but are not limited to, the following:

  a.    Whether ASTM D3775 Standard Test Method for Warp (End) and Filling (Pick) Count of Woven Fabrics was the generally accepted method in the textile industry for calculating thread count during the relevant time period;

  b.    Whether Defendants knew or should have known that ASTM D3775 was the generally accepted method in the textile industry for calculating thread count during the relevant time period;

  c.    Whether Defendants misrepresented thread counts on their bedding and linen products contrary to industry standards and in contravention of ASTM D3775;

  d.    Whether Defendants manufactured, advertised, sold, or

delivered for sale bedding and linen products that were advertised or represented to be of a certain thread count, but were, in fact, of a lesser thread count;

e. Whether Defendants knew or should have known persons would rely on the inflated thread counts in making their purchase decision;

f. Whether Defendants were negligent in representing thread counts on their bedding and linen products contrary to industry standards and in contravention of ASTM D3775;

g. Whether Defendants fraudulently concealed that the thread counts and their bedding and linen products were inflated, contrary to industry standards and in contravention of ASTM D3775;

h. Whether Defendants' inflated thread counts violated the laws of the States of Missouri, North Carolina, California, Massachusetts, and New Hampshire, and/or other States;

i. Whether Defendants are liable for violation of the laws of the States of Missouri, North Carolina, California, Massachusetts, and New Hampshire, and/or other States;

j. Whether Defendants' misrepresentations caused damages to Class Members and the extent of those damages;

k. Whether Defendants were unjustly enriched, and, if so, the extent to which they were unjustly enriched; and

l. Whether Defendants should be enjoined from future conduct of the type complained of herein.

102. Plaintiffs' claims are representative of the putative Classes because their claims are typical of the claims of the Class members and rely on Defendants' misrepresentations and application of an industry standard. If brought and prosecuted individually, the claims of each putative Class member would require proof of the same materials and substantive facts, rely on the same remedial theories, and seek the same

relief.

103.     Plaintiffs will fairly and adequately protect the interests of the Classes and have retained attorneys experienced in class and complex litigation as counsel.

104.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

105.     A class action will permit an orderly and expeditious administration of the claims of the Classes, will foster economies of time, effort, and expense, and will insure uniformity of decisions.

106.     The prosecution of individual actions by Class members would: (a) create the risk of inconsistent or varying adjudications with respect to individual Class members; and (b) be grossly impracticable because the cost of vindicating an individual Class member's claim would likely exceed the value of the claim.

107.     Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

108.     Due to the relatively small amounts of damaged to each member of the Classes, a class action is superior to other available methods for the fair and efficient adjudication of the controversy which is subject of this action.

109.     The interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and there is no known difficulty that would be encountered in the management of these Classes.

110.     All conditions precedent for filing this Complaint have been satisfied,

occurred or been met including all pre-suit notice to Defendants.

111.    Plaintiff Hill provided Defendants with notice of her and the Classes' claims by letter dated October 19, 2018.  Plaintiff Morrison provided Defendants with notice of her and the Classes' claims by letter dated November 27, 2018. Plaintiff Hawes provided Defendants with notice of her and the Classes' claims by letter on or around May 17, 2019. Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

112.    Defendants have failed to cure Plaintiffs' concerns.

## EQUITABLE TOLLING

113.    The foregoing allegations are incorporated by reference and realleged herein.

114.    Despite knowing that their bedding and linen products were defective because they did not contain the qualities that Defendants advertised -- specifically with regard to thread counts -- Defendants concealed their defective nature from Plaintiff and the Class by affirmatively marketing and advertising their products as having certain qualities that they did not have.

115.    Plaintiff and Class Members did not and could not have known that their bedding and linen did not have the qualities that they were advertised to have, as this fact was not disclosed to them and could not have been apparent from a superficial inspection the products.

116.    Plaintiff and Class Members could not have discovered the defective nature of Defendants' products through the exercise of due diligence.

117.    Due to Defendants' fraudulent concealment of the defects associated with their products, Defendants are estopped from asserting statute of limitations defenses to any of the claims alleged herein.

**COUNT ONE**
**Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301,** *et seq.*

118.    Plaintiffs incorporate by reference all of the allegations in this Complaint as though fully set forth herein.

119.    This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act (for the purpose of this Count, the "Act") by virtue of 28 U.S.C. § 1332(a)-(d).

120.    Defendants are "suppliers" and "warrantors" within the meaning of 15 U.S.C. § 2301(4) and (5) and/or (7) because they regularly sell sheets and bedding products with a written and/or implied warranty guaranteeing that their products have a certain thread count and a certain corresponding quality.

121.    Plaintiffs and other Class Members are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. § 2301(1) and (3) because they purchased sheets and bedding products for personal, family, or household purposes.

122.    The sheets and bedding products are "consumer products" within the meaning of the Act. 15 U.S.C. § 2301(1).

123.    The Act provides a cause of action for any consumer who suffers damages because of the failure of a warrantor to comply with a written or implied warranty. 15 U.S.C. § 2310(d)(1).

124.    The amount in controversy of the Plaintiffs' individual claims meets or

exceeds $25.00 in value.

125.    In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this suit.

126.    Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

127.    Under the Act, damaged consumers have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

128.    Defendants provided Plaintiffs and the proposed classes with the following express warranty: that the sheets and bedding products had a certain true and accurate thread count.

129.    Defendants AQ Textiles and Creative Textiles warranted in their packaging and elsewhere that the sheet and bedding products would meet a certain level of performance over a certain period of time, namely that they had a certain thread count, and would therefore have the performance characteristics of sheets with such thread count.

130.    These express warranties constitute written warranties within the meaning of 15 U.S.C. § 2301(6).

131.    The sheets and bedding products' implied warranties are covered by 15 U.S.C. § 2301(7).

132.    The terms of written warranties and implied warranties became part of the basis of the bargain among Plaintiffs (and all other Class Members) and Defendants when Plaintiffs (and all other Class Members) were deciding to purchase the sheets or bedding

products.

133. Defendants breached these written and implied warranties as described in detail above.

134. Without limitation, the sheets and bedding products had actual thread counts lower than the ones warranted and advertised.

135. Privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between AQ Textiles and Creative Textiles, and specifically, of AQ Textiles' and Creative Textiles' warranties.

136. Upon information and belief these contracts provided for products warranted to be of a particular thread count, and therefore of a quality that would merit a higher price than products labeled with a lower thread count.

137. Affording Defendants a reasonable opportunity to cure their breaches of warranty would be unnecessary and futile here. At the time of sale of the sheets and bedding products, Defendants knew, should have known, or were reckless in not knowing of the misrepresentations concerning the products' thread count, but nonetheless failed to rectify the situation.

138. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

139. As a direct and proximate result of Defendants' breach of the written warranties and the implied warranty of merchantability, Plaintiffs and Class Members

have suffered damages in an amount to be determined at trial.

140.    Plaintiffs, individually and on behalf of a Nationwide Class, seek all damages permitted by law, including a full refund of the purchase price for the sheets, compensation for the monetary difference between the sheets and bedding products as warranted and as sold, incidental and consequential damages, statutory attorney fees, and all other relief allowed by law.

141.    Plaintiff Hill provided Defendants with notice of her and the Classes' claims by letter dated October 19, 2018.

142.    Plaintiff Morrison provided Defendants with notice of her and the Classes' claims by letter dated November 27, 2018.

143.    Plaintiff Hawes provided Defendants with notice of her and the Classes' claims by letter on or around May 17, 2019.

144.    Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

145.    Defendants have failed to cure Plaintiffs' concerns.

## COUNT TWO
### Breach of Implied Warranty of Merchantability
**(Mo. Rev. Stat. § 400.2-313-314; N.C.G.S.A. § 25-2-314; Cal. Com. Code § 2314; Mass. Gen. Laws Ann. ch. 106, § 2-314; N.H. Rev. Stat. Ann. § 382-A:2-314)**

146.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

147.    Each Defendant was a "seller," within the meaning of the applicable statutes, and Plaintiff Hill and North Carolina Class Members were "buyers," within the meaning of the applicable statutes.

27

148. Each Defendant was a "merchant with respect to goods" within the meaning of the applicable statutes.

149. Pursuant to N.C.G.S.A. § 25-2-314, an implied warranty for Defendants' sheets and bedding products was created by law, guaranteeing that (2) goods to be merchantable must be at least such as: (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled; and (f) conform to the promises or affirmations of fact made on the container or label if any."

150. Pursuant to Mo. Rev. Stat § 400.2-314(2), an implied warranty for Defendants' sheets and bedding products was created by law, guaranteeing that the goods "(a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any."

151. Pursuant to Cal. Com. Code § 2314(2), an implied warranty for Defendants' sheets and bedding products was created by law, guaranteeing that the goods

"(a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any."

152.    Pursuant to Mass. Gen. Laws Ann. ch. 106, § 2-314(2), an implied warranty for Defendants' sheets and bedding products was created by law, guaranteeing that the goods "(a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any."

153.    Pursuant to N.H. Rev. Stat. Ann. § 382-A:2-314(2), an implied warranty for Defendants' sheets and bedding products was created by law, guaranteeing that the goods "(a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and

among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any."

154.   The sheets and bedding products, when sold and thereafter, were not in merchantable condition, were unfit for the ordinary purpose for which they are used, and failed the promises of the warranty of merchantability, because they lacked the quality, properties, and characteristics of sheets with thread counts as high as advertised.

155.   Defendants were noticed of these issues within a reasonable time by multiple complaints including the instant one.

156.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Missouri, North Carolina, California, Massachusetts, and New Hampshire Class Members have been damaged in an amount to be proven at trial.

157.   Plaintiff Hill provided Defendants with notice of her and the Classes' claims by letter dated October 19, 2018.

158.   Plaintiff Morrison provided Defendants with notice of her and the Classes' claims by letter dated November 27, 2018.

159.   Plaintiff Hawes provided Defendants with notice of her and the Classes' claims by letter on or around May 17, 2019.

160.   Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

161.   Defendants have failed to cure Plaintiffs' concerns.

## COUNT THREE
### Breach of Express Warranty
### Missouri, North Carolina, California, Massachusetts, and New Hampshire
### U.C.C. § 2-313

162.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

163.    Defendants' affirmations of fact and/or promises relating to their sheets and bedding products created express written warranties that the products would conform to Defendants' affirmations of fact and/or promises.

164.    Alternatively, Defendants' descriptions of their sheets and bedding products became part of the bases of the bargains, creating express written warranties that the products purchased by Plaintiffs and Class Members would conform to Defendants' descriptions and specifications.

165.    In fact, the sheets and bedding products purchased by Plaintiffs and the Class Members did not so conform to the descriptions and specifications.

166.    Plaintiffs and the Class Members were the intended targets of Defendants' misrepresentations.

167.    Plaintiffs and the Class Members reasonably relied on Defendants' misrepresentations.

168.    Defendants expressly warrants on the labels of the sheets and bedding products that they have certain thread counts.  In fact, the products' thread counts are lower than promised and warranted.

169.    Plaintiffs and Class Members relied on Defendants' false representations as to the sheets and bedding products' thread counts.

170.   Defendants have breached their express warranties.

171.   As a result of the foregoing, the Plaintiffs and the Class Members have suffered damages in that the value of the products they purchased was less than warranted by Defendants.

172.   Plaintiffs and the Class Members were injured as a result of Defendants' breach of their express warranties about their sheets and bedding products.

173.   By reason of the foregoing, Plaintiffs and the Class Members were damaged in the amount they paid for the falsely labeled sheets and bedding products, together with punitive damages.

174.   Plaintiff Hill provided Defendants with notice of her and the Classes' claims by letter dated October 19, 2018.

175.   Plaintiff Morrison provided Defendants with notice of her and the Classes' claims by letter dated November 27, 2018.

176.   Plaintiff Hawes provided Defendants with notice of her and the Classes' claims by letter on or around May 17, 2019.

177.   Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

178.   Defendants have failed to cure Plaintiffs' concerns.

## COUNT FOUR
### Negligent Misrepresentation

179.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

180. Defendants owed the Plaintiff and Class Members a duty of care to design, develop, test, manufacture, distribute, market, and sell non-defective sheets and bedding products.

181. Defendants also owed Plaintiff and Class Members a duty of care to warn them of the defects associated with their linens.

182. Defendants breached their duty of care by negligently selecting materials for designing, developing, testing, distributing, marketing, and selling the defective linens.

183. Defendants also breached their duty of care by negligently failing to warn consumers, contractors, and retailers that the linens were defective.

184. Defendants were aware, or reasonably should have been aware, that their linens were defective.

185. When they purchased Defendants' products, Plaintiffs and the Class Members were unaware of those products' defective nature.

186. Plaintiffs and the Class Members justifiably relied on the false representations as to the sheets and bedding products' thread counts.

187. The defective products resulted in damage to the Plaintiffs and the Class members in that the Plaintiffs and the Class Members would not have purchased those products if they had known they were defective.

188. As a direct and proximate result of Defendants' negligence, the Plaintiffs and the Class Members have sustained, are sustaining, and will sustain damages and losses as alleged herein.

**COUNT FIVE**
**Violation of Missouri's Merchandising Practices Act**

166.    Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

167.    Missouri's Merchandising Practices Act (the "MMPA") prohibits the act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce § 407.020, RSMo.

168.    Defendants' conduct constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce because Defendants misrepresent that the Products are of a particular thread count when they are not.

169.    In addition, by claiming the Products are of a particular thread count, Defendants' Products create the false impression and have the tendency and capacity to mislead consumers (*see* 15 CSR 60-9.020) into believing that the Products are of a higher thread count than they actually are.

170.    Moreover, the overall format and appearance of the Products have the tendency and capacity to mislead consumers (15 C.S.R. 60-9.030) because they create the false impression that the Products are of a higher thread count

171.    The Products were therefore worth less than the Products as represented, and Plaintiff and Class Members paid extra or a premium for them.

34

172. Plaintiff and Class Members purchased the Products for personal, family, or household purposes and thereby suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein, including the difference between the actual value of the Products and the value of the Products if they had been as represented.

173. Plaintiff also seeks injunctive relief to remedy Defendants' ongoing deceptive practices.

174. Plaintiff Hill provided Defendants with notice of her and the Classes' claims by letter dated October 19, 2018.

175. Plaintiff Morrison provided Defendants with notice of her and the Classes' claims by letter dated November 27, 2018.

176. Plaintiff Hawes provided Defendants with notice of her and the Classes' claims by letter on or around May 17, 2019.

177. Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

178. Defendants have failed to cure Plaintiffs' concerns.

## COUNT SIX
### Violation of the North Carolina Unfair Trade Practices Act
### N.C. Gen. Stat. § 75-1.1

179. Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in this Complaint, as though fully set forth herein.

180. Defendants engaged in "unfair or deceptive acts or practices in or affecting commerce" under the North Carolina Unfair Trade Practices Act when they marketed, sold, or distributed sheets and linens in North Carolina that contained less thread counts

than advertised. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures were unfair, deceptive, and fraudulent.

181. During the Class Period, Defendants' unlawful conduct had a substantial effect on North Carolina commerce.

182. Defendants' unlawful conduct had the following effects: Plaintiffs relied on misrepresentations. Plaintiffs and Class members overpaid for the sheet and linens. Defendants made sales based on false representations.

183. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their business and property and are threatened with further injury.

184. Defendants have engaged in unfair and deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1.

185. Plaintiffs are entitled under N.C. Gen. Stat. § 75-16 to bring a civil action to remedy Defendants' violations and collect treble damages.

186. Accordingly, Plaintiffs and Class members seek all relief available under N.C. Gen. Stat. §§ 75-1.1 and 75-16, including treble damages and attorneys' fees.

187. Plaintiff Hill provided Defendants with notice of her and the Classes' claims by letter dated October 19, 2018. Plaintiff Morrison provided Defendants with notice of her and the Classes' claims by letter dated November 27, 2018.

188. Plaintiff Hawes provided Defendants with notice of her and the Classes' claims by letter on or around May 17, 2019.

189. Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

190. Defendants have failed to cure Plaintiffs' concerns.

## COUNT SEVEN
### Violation of the California Consumer Legal Remedies Act
### Cal. Civ. Code, § 1750, *et seq.*

166. Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in this Complaint, as though fully set forth herein.

189. Plaintiffs bring this count pursuant to the Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"), for omissions by Defendants, made actionable by affirmative misrepresentations and/or exclusive knowledge of material facts, and Defendants' active concealment of the truth.

190. The bedding and linen products are "goods" pursuant to the CLRA at California Civil Code § 1761(a).

191. Defendants are "persons" pursuant to the CLRA at California Civil Code § 1761(c).

192. Plaintiffs and the Class Members are "consumers" pursuant to the CLRA at California Civil Code § 1761(d).

193. Purchases of the bedding and linen products by Plaintiff and the Class Members are "transactions" pursuant to the CLRA at California Civil Code § 1761(e).

### *Affirmative Misrepresentations*

194. Thread count is a specific, quantifiable attribute of bedding and linen products.

195.    There is no requirement to communicate the thread count of bedding and linen products when advertising or selling them to consumers.

196.    However, thread count is a significant driver of consumers' perceptions of the value and quality of the products, as alleged throughout this Complaint.

197.    Defendants sold to Plaintiffs bedding and linen products that were advertised with inflated thread counts and overstated levels quality, durability, longevity, fitness, softness, comfort and other characteristics associated with sheets or linen products of that represented thread count

198.    Defendants knew or should have known that the thread counts listed by themselves and/or their manufacturers or wholesalers were false or misleading to consumers.

199.    Defendants, as detailed in this Complaint, repeated these false or misleading statements of thread count in various product listings and descriptions, either in the store, or advertisements, or the website, which were seen and relied upon by Plaintiff and Class Members.

200.    These misstatements of the thread count of the bedding and linen products are prohibited by the CLRA, because they are "undertaken by [Defendants] in a transaction intended to result or which results in the sale or lease of [the bedding and linen products] to any consumer."

201.    Defendants violated the CLRA by knowingly advertising that their bedding and linen products had a higher thread count than they actually had and overstating the levels quality, durability, longevity, fitness, softness , comfort and other characteristics

associated with sheets or linen products of that represented thread count.

202. Defendants violated the CLRA's proscription against misrepresentation of the "approval, characteristics, ingredients, uses, benefits, or quantities" of the bedding and linen products by advertising a falsely inflated thread count and overstating the levels quality, durability, longevity, fitness, softness, comfort and other characteristics associated with sheets or linen products of that represented thread count.

203. These misrepresentations violated California Civil Code § 1770(a)(5)'s proscription against representing that goods have characteristics that they do not have; Civil Code § 1770(a)(7)'s proscription against representing that goods are of a particular standard, quality or grade when they are of another; and Civil Code § 1770(a)(9)'s proscription against advertising goods with the intent not to sell the goods as advertised.

### Exclusive Knowledge of Material Facts and Omissions of Material Facts

204. Upon information and belief, through examination of their own products and interactions with manufacturers or wholesalers, and as otherwise detailed in this Complaint, Defendants have exclusive knowledge concerning the actual thread count of the bedding and linen products and the corresponding levels of quality, durability, longevity, fitness, softness, comfort and other characteristics associated with sheets or linen products of that represented thread count that they import and sell to consumers.

205. Defendants owe consumers a duty to disclose the true and accurate thread count of the products and the corresponding quality, durability, longevity, fitness, softness, comfort and other characteristics associated with sheets or linen products of that represented thread count and that the thread count information represented by

Defendants, and/or the manufacturers or wholesalers of the bedding and linen products and advertised by Defendants is not false and/or misleading .

206.    Consumers, including Plaintiff, have no realistic means of determining the actual thread count of the bedding and linen products or the corresponding quality, durability, longevity, fitness, softness, comfort and other characteristics associated with sheets or linen products of that represented thread count.

207.    A textile expert with magnifying equipment is needed to make such a determination.

208.    Further, the process of testing the thread count damages the sheets. Consumers therefore cannot be expected to discover the true thread count before making a purchase.

209.    This is true under any circumstances, but especially when ordering products over the internet or by catalog.

210.    Retailers of bedding and linen products frequently fail to identify the manufacturer, importer, or seller of textiles at the point of sale or on product packaging. Import records similarly do not reveal the names of the original manufacturers of the materials used to construct the imported products.  These omissions from packaging and import records make it difficult to trace products back to manufacturers.

211.    Defendants concealed from Plaintiffs and Class Members that the thread counts advertised for the bedding and linen products are inflated to more than the actual thread count as a result of counting plies rather than threads, and that these thread counts are not calculated according to the method used by other bedding and linen providers and

prescribed by ASTM D3775.

212. Defendants further concealed from Plaintiffs and Class Members the true quality, durability, longevity, fitness, softness, comfort and other characteristics associated with sheets or linen products of the represented thread count.

213. Plaintiffs and Class Members, as reasonable consumers, attached importance to representations by Defendants concerning the thread counts of the bedding and linen products in deciding whether to purchase the products, and in deciding whether the price was reasonable.

214. Thread counts are a material factor in consumers' determinations of the value, quality, durability, longevity, fitness, softness, comfort and other characteristics of bedding and linen products.

215. Without disclosure of the above information, reasonable consumers such as Plaintiffs were and continue to be deceived by Defendants' false thread counts.

216. Defendants violated the CLRA by failing to disclose material facts and continuing to advertise thread counts Defendants knew to be inflated in, without limitation, product labels, advertisements, product descriptions, and website text.

217. Defendants knew or should have known that their misrepresentations would cause Plaintiffs and Class Members to pay higher prices for the bedding and linen products than they would have paid, had a misleading thread count not been advertised.

218. In failing to disclose material facts contrary to their affirmative representations, Defendants violated California Civil Code § 1770(a)(5)'s proscription against representing that goods have characteristics that they do not have; Civil Code §

1770(a)(7)'s proscription against representing that goods are of a particular standard, quality, or grade when they are of another; and Civil Code § 1770(a)(9)'s proscription against advertising goods with the intent not to sell the goods as advertised.

219. Pursuant to California Civil Code § 1782(d), Plaintiffs seek the following relief for Defendant's violations of CLRA §§ 1770(a)(5), (7), and (9) with regard to the bedding products identified herein:

    a.    Actual damages under Civil Code § 1780(a)(1);

    b.    Restitution under Civil Code § 1780(a)(3);

    c.    Punitive damages under Civil Code § 1780(a)(4);

    d.    Attorneys' fees and costs under Civil Code § 1780(d); and

    e.    Any other relief the Court deems just and proper under the CLRA.

167. Plaintiff Hill provided Defendants with notice of her and the Classes' claims by letter dated October 19, 2018.

168. Plaintiff Morrison provided Defendants with notice of her and the Classes' claims by letter dated November 27, 2018.

169. Plaintiff Hawes provided Defendants with notice of her and the Classes' claims by letter on or around May 17, 2019.

170. Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

171. Defendants have failed to cure Plaintiffs' concerns.

**COUNT EIGHT**
**Violation of the California Unfair Competition Law – Unlawful Prong**
**Cal. Bus. & Prof. Code, § 17200, *et seq.***

166.   Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in this Complaint, as though fully set forth herein.

167.   The acts of Defendants described herein constitute unlawful business practices and violations of California's Unfair Competition Law, Business and Professions Code § 17200, *et seq.* (UCL).  Section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

168.   Defendants' business practices as alleged are unlawful under Federal Trade Commission Act (FTCA) § 5(a), 15 U.S.C. § 45(a), which outlaws "unfair or deceptive acts or practices in or affecting commerce."

169.   Defendants' business practices are unfair under FTCA § 5(a) because they are "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition."  15 U.S.C. § 45(n).

170.   Defendants' business practices are deceptive under FTCA § 5(a) because they include affirmative representations and omissions and are likely to mislead reasonable consumers under the circumstances.

171.   Defendants' business practices are further unlawful under the CLRA and under UCL § 17000, *et seq.*, as alleged herein.

172.   Defendants' business practices are also unlawful pursuant to the FTCA by way of the Textile Fiber Products Identification Act, 15 U.S.C. §§ 70a(a), 70a(b), and/or

43

§ 70a(c). These sections make it unlawful, under 15 U.S.C. §§ 41 *et seq.*, to sell, transport, deliver, or advertise "any textile fiber product . . . which is misbranded or deceptively advertised."

173. As a result of Defendants' unlawful business practices, Plaintiffs and Class Members have been harmed and are entitled, pursuant to UCL § 17203, to injunctive relief against the continuation of Defendants' practices, as well as the restitution of payments made for Defendants' bedding and linen products, including other equitable relief, costs, and attorneys' fees as recoverable by law.

174. Plaintiff Hill provided Defendants with notice of her and the Classes' claims by letter dated October 19, 2018.

175. Plaintiff Morrison provided Defendants with notice of her and the Classes' claims by letter dated November 27, 2018.

176. Plaintiff Hawes provided Defendants with notice of her and the Classes' claims by letter on or around May 17, 2019.

177. Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

178. Defendants have failed to cure Plaintiffs' concerns.

## COUNT NINE
### Violation of the California Unfair Competition Law – Unfair Prong
### Cal. Bus. & Prof. Code, § 17200, *et seq.*

166. Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in this Complaint, as though fully set forth herein.

167. Defendants' acts constitute unfair competition under § 17200. They are contrary to public policy, violative of at least the FTCA, CLRA, and California False Advertising Law, and injurious to the public and to competitors who advertise accurate thread counts.

168. Purchasers of Defendants' misleadingly advertised and labeled bedding and linen products, including Plaintiffs and Class Members, were injured because they paid an excessive price for a product other than what they thought they were buying.

169. Falsely advertising thread counts has no conceivable benefit to consumers or to competition.

170. This behavior leads consumers to purchase products they do not want, and it forces competitors to either follow suit in the deceptive conduct or suffer lost sales.

171. Consumers could not have reasonably avoided the injuries they suffered because they lack the skill, knowledge, resources, equipment, and opportunity necessary to discern the true nature of the bedding and linen products Defendants sold.

172. As a result of Defendants' unfair business practices, Plaintiffs and Class Members have been harmed and are entitled, pursuant to UCL § 17203, to injunctive relief against the continuation of Defendants' practices, as well as the restitution of payments made for Defendants' bedding and linen products including other equitable relief, costs, and attorneys' fees as recoverable by law.

173. Plaintiff Hill provided Defendants with notice of her and the Classes' claims by letter dated October 19, 2018.

174.   Plaintiff Morrison provided Defendants with notice of her and the Classes' claims by letter dated November 27, 2018.

175.   Plaintiff Hawes provided Defendants with notice of her and the Classes' claims by letter on or around May 17, 2019.

176.   Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

177.   Defendants have failed to cure Plaintiffs' concerns.

## COUNT TEN
### Violation of the California Unfair Competition Law – Fraudulent Prong
### Cal. Bus. & Prof. Code, § 17200, *et seq.*

166.   Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in this Complaint, as though fully set forth herein.

167.   Defendants' acts constitute fraudulent business practices under UCL § 17200.  They are contrary to public policy, violative of at least the FTCA, CLRA, and California False Advertising Law (UCL § 17500), and injurious to the public and to competitors who advertise accurate thread counts or no thread counts.

168.   Defendants represented the bedding and linen products as having a specified thread count with the intention that customers would rely on those representations in their purchases.

169.   Defendants knew or should have known that the threat counts they represented were false.

170.   Defendants' thread count representations were material factors in the purchases of the bedding and linen products by Plaintiffs and the Class.

46

171. Defendants' thread count representations were and continue to be relied upon by reasonable consumers, such as Plaintiffs and the Class.

172. Due to Defendants' fraudulent and deceptive representations concerning thread count, Plaintiff and the Class paid too much for the bedding and linen products.

173. As a result of Defendants' fraudulent business practices, Plaintiffs and Class Members have been harmed and are entitled, pursuant to UCL § 17203, to injunctive relief against the continuation of Defendants' practices, as well as the restitution of payments made for Defendants' bedding and linen products including other equitable relief, costs, and attorneys' fees as recoverable by law.

174. Plaintiff Hill provided Defendants with notice of her and the Classes' claims by letter dated October 19, 2018.

175. Plaintiff Morrison provided Defendants with notice of her and the Classes' claims by letter dated November 27, 2018.

176. Plaintiff Hawes provided Defendants with notice of her and the Classes' claims by letter on or around May 17, 2019.

177. Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

178. Defendants have failed to cure Plaintiffs' concerns.

### COUNT ELEVEN
### Violation of the Massachusetts Consumer Protection Law
### Mass. Gen. Laws Ann. ch. 93A, § 1, *et seq.*

166. Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in this Complaint, as though fully set forth herein.

167.    Defendants engaged in "unfair methods of competition and unfair or deceptive acts or practices" under the Massachusetts Consumer Protection Law when they marketed, sold, or distributed sheets and linens in Massachusetts that contained less thread counts than advertised. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures were unfair, deceptive, and fraudulent.

168.    During the Class Period, Defendants' unlawful conduct had a substantial effect on Massachusetts commerce.

169.    Defendants' unlawful conduct had the following effects: Plaintiffs relied on misrepresentations; Plaintiffs and Class members overpaid for the sheet and linens; and Defendants made sales based on false representations.

170.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their business and property and are threatened with further injury.

171.    Defendants have engaged in unfair and deceptive acts or practices in violation of Mass. Gen. Laws Ann. ch. 93A, § 2.

172.    Plaintiffs are entitled under Mass. Gen. Laws Ann. ch. 93A, § 11 to bring a civil action to remedy Defendants' violations and collect treble damages.

173.    Accordingly, Plaintiffs and Class members seek all relief available under Mass. Gen. Laws Ann. ch. 93A, § 11, including treble damages and attorneys' fees.

174.    Plaintiff Hill provided Defendants with notice of her and the Classes' claims by letter dated October 19, 2018.

175.    Plaintiff Morrison provided Defendants with notice of her and the Classes' claims by letter dated November 27, 2018.

176.    Plaintiff Hawes provided Defendants with notice of her and the Classes' claims by letter on or around May 17, 2019.

177.    Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

178.    Defendants have failed to cure Plaintiffs' concerns.

## COUNT TWELVE
### Violation of the New Hampshire Consumer Protection Act
### N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

166.    Plaintiffs repeat, reallege, and incorporate by reference the allegations set forth in this Complaint, as though fully set forth herein.

167.    Defendants engaged in "unfair method[s] of competition [and] unfair or deceptive act[s] or practice[s]" under the New Hampshire Consumer Protection Act when they marketed, sold, or distributed sheets and linens in North Carolina that contained less thread counts than advertised. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures were unfair, deceptive, and fraudulent.

168.    During the Class Period, Defendants' unlawful conduct had a substantial effect on New Hampshire commerce.

169.    Defendants' unlawful conduct had the following effects: Plaintiffs relied on misrepresentations; Plaintiffs and Class members overpaid for the sheet and linens; and Defendants made sales based on false representations.

170. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their business and property and are threatened with further injury.

171. Defendants have engaged in unfair and deceptive acts or practices in violation of N.H. Rev. Stat. Ann. § 358-A:2.

172. Plaintiffs are entitled under N.H. Rev. Stat. Ann. § 358-A:10 and 11 to bring a civil action to remedy Defendants' violations and collect treble damages.

173. Accordingly, Plaintiffs and Class members seek all relief available under N.H. Rev. Stat. Ann. § 358-A:10 and 11, including treble damages and attorneys' fees.

174. Plaintiff Hill provided Defendants with notice of her and the Classes' claims by letter dated October 19, 2018.

175. Plaintiff Morrison provided Defendants with notice of her and the Classes' claims by letter dated November 27, 2018.

176. Plaintiff Hawes provided Defendants with notice of her and the Classes' claims by letter on or around May 17, 2019.

177. Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

178. Defendants have failed to cure Plaintiffs' concerns.

## COUNT THIRTEEN
### Unjust Enrichment

179. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

180. Plaintiff brings this Count on behalf of herself and the Class.

181. As Plaintiff and the Class show just grounds for recovering money to pay for benefits Defendants received from them, they have a right to restitution at law through an action derived from the common-law writ of assumpsit by implying a contract at law, or a quasi-contract as an alternative to a claim for breach of contract.

182. Plaintiff and members of the Class conferred a benefit upon Defendants by purchasing the bedding and linen products with an elevate thread count which was false and misleading.

183. Defendant had knowledge that this benefit was conferred upon it.

184. Defendants, having received such benefits, is required to make restitution as the circumstances here are such that, as between the two, it is unjust for Defendants to retain such monies based on the illegal conduct described above.

185. Such money or property belongs in good conscience to Plaintiff and the Class members and can be traced to funds or property in Defendants' possession.

186. Plaintiff and Class members have unjustly enriched Defendants through payments and the resulting profits enjoyed by Defendants as a direct result of such payments. Plaintiff's and Class members' detriment and Defendants' enrichment were related to and flowed from the conduct challenged in this Complaint.

187. Defendants appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Class members, who, without knowledge that the bedding products and linens had elevated thread counts which were false and not accurate and that the bedding and linen products would not perform as advertised, paid a higher price for the product than it was worth.

188.   Defendant also received monies for the bedding and linen products that Plaintiff and the proposed Class members would not have otherwise purchased had they known the truth about the thread counts and quality and characteristics of the bedding and linen products.

189.   It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

190.   Defendants' retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

191.   An entity that has been unjustly enriched at the expense of another is required to make restitution to the other. Under common law principles recognized in claims of common counts, assumpsit, and quasi-contract, as well as principles of unjust enrichment, under the circumstances alleged herein it would be inequitable for Defendants to retain such benefits without paying restitution or damages therefor. Defendant should not be permitted to retain the benefits conferred via payments to be received from and/or paid by Plaintiff and Class members as a result of such transactions, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the putative Class Members pray that the Court enter judgment for them and against Defendants as follows:

a.      Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as the representatives of the Class, and designating Plaintiffs' counsel as counsel for the Class;

b.      Declaring that Defendants' acts and practices, as described herein, constitute deceptive acts and unconscionable business practices that are unlawful under the Missouri, North Carolina, California, Massachusetts, and New Hampshire consumer statutes, and common law.

c.      Awarding Plaintiffs and the Class permanent injunctive relief prohibiting, restraining, and enjoining defendants from engaging in the conduct complained of herein, including, but not limited to, manufacturing, marketing, advertising, selling, and distributing bedding and linen products that have inflated thread counts;

d.      Directing Defendants to disgorge profits from its misleading and deceptive practices and to pay restitution to the Class;

e.      Awarding Plaintiffs and the Class actual, compensatory damages in an amount to be proven;

f.      Awarding Plaintiffs and the Class restitution of all monies paid to Defendants as a result of unlawful, deceptive, and unfair business practices;

g.      Awarding Plaintiffs and the Class exemplary damages in an amount to be proven;

h.      Ordering Defendants to issue corrective advertising;

i.      Awarding Plaintiffs and the Class reasonable attorneys' fees, experts

witness fees, pre- and post-judgment interest, and other costs in amounts to be determined by the Court; and

j.       Granting any other further legal or equitable relief as this Court deems appropriate.

Dated this 12th day of December 2019.

/s/ Scott C. Harris
Scott C. Harris
N.C. Bar No. 35328
**WHTFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, North Carolina 27603
Phone (919) 600-5000
Facsimile (919) 600-5035
scott@wbmllp.com

Charles LaDuca (*To Be Admitted PHV*)
David Black (*To Be Admitted PHV*)
Brendan Thompson (*To Be Admitted PHV*)
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com
dblack@cuneolaw.com
brendant@cuneolaw.com

Michael McShane
S. Clinton Woods
Ling Y. Kuang (*To Be Admitted PHV*)
AUDET & PARTNERS, LLP
711 Van Ness Avenue
Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
mmcshane@audetlaw.com
lkuang@audetlaw.com

Charles Schaffer (*To Be Admitted PHV*)
LEVIN SEDRAN & BERMAN
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: (877) 882-1011
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com


Bruce Steckler (*To Be Admitted PHV*)
Stuart Cochran (*To Be Admitted PHV*)
Kirstine Rogers(*To Be Admitted PHV*)
STECKLER GRESHAM COCHRAN
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: 972-387-4040
bruce@stecklerlaw.com
stuart@stecklerlaw.com
krogers@stecklerlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the Amended Class Action Complaint was filed electronically with the Court's CM/ECF system, which will send notice of filing to all counsel of record.

This the 12th day of December 2019.

/s/ Scott C. Harris
Scott C. Harris
N.C. Bar No. 35328
**WHTFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, North Carolina 27603
Phone (919) 600-5000
Facsimile (919) 600-5035
scott@wbmllp.com

56