IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AMY HILL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19cv983 |
| | ) | |
| AQ TEXTILES LLC, and | ) | |
| CREATIVE TEXTILE MILLS | ) | |
| PVT. LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiffs bring this action under federal and state law alleging that Defendants have "deceive[d] and [misled] consumers into believing that Defendants' bedding and linen products had higher thread counts than they really have." (ECF No. 15 ¶ 1.) Plaintiffs seek relief on behalf of themselves and on behalf of putative classes who are similarly situated. (*Id.* at 1.) Before the Court are two motions filed by Defendant AQ Textiles to dismiss Plaintiffs' thirteen counts pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. (ECF Nos. 18; 29.) For the reasons set forth below, the Court finds that Plaintiffs lack standing and therefore the Court lacks jurisdiction to proceed with this case. Accordingly, Defendant's motions to dismiss under Rule 12(b)(6) and 12(b)(1) will be denied as moot and Plaintiff's Amended Complaint will be dismissed.

**I.     BACKGROUND**

Plaintiffs Dominique Morrison, Sara Hawes, Cassandra Chiaraluce, and Jonathan Fontaine purchased bed linens labeled as having thread counts of 800 or more from retail stores in Missouri, California, New Hampshire, and Massachusetts.[1]  (ECF No. 15 ¶¶ 33, 37, 41, 45.)  Yet Plaintiffs allege that these sheets, "imported by Defendant AQ Textiles and manufactured by Defendant Creative Textiles, [were] represented to be higher thread counts than they were."  (*Id.* ¶ 90.)  More specifically, they claim that Defendants have ignored the "long-standing industry standards for calculating thread counts," (*id.* ¶ 84), and are doubling or tripling "the true thread count" by counting plied yarns not as a single thread but as the number of intertwined strands from which they are comprised.  (*Id.* ¶ 76.)  According to Plaintiffs, this practice has "created confusion in the marketplace and caused consumers to compare thread counts that may have been calculated in two dramatically different ways."  (*Id.* ¶ 78.)

Plaintiffs further allege that the bed linens at issue "are of lower quality, softness, comfort, durability, and longevity than they otherwise would [be] if they were the represented thread count and quality as stated on the labeling and price tags."[2]  (*Id.* ¶ 85.)  Moreover, they claim that these sheets are "inherently defective and not fit for their intended use as high

---

[1] Plaintiff Amy Hill, who filed the original Complaint with Plaintiff Morrison, (ECF No. 1), has subsequently been dismissed with prejudice following a joint stipulation by the parties, (ECF No. 22).

[2] Plaintiffs additionally allege that "Defendants directed their agents and retail partners, such as [retailer] Macy's, to represent that numerous bedding and linen products were of a certain thread count." (ECF No. 15 ¶ 86.) With respect to any actions taken by a purported agent, however, Plaintiffs fail to establish—or even attempt to establish—any type of agency relationship either between the parties or with any other entities.  The Court therefore declines to broaden the scope of its inquiry to consider the actions taken by any purported agent.

2

quality luxury sheets and bedding." (*Id.*)  Plaintiffs, citing "Defendants' deceptive acts and unconscionable business practices," (*id.* ¶ 1), now urge the Court to certify multiple classes of plaintiffs, grant permanent injunctive relief, and award compensatory and exemplary damages to consumers who have likewise purchased sheets displaying allegedly inaccurate thread counts, (i*d.* at 52–54.)

## II. ARTICLE III STANDING

The Court first considers Article III standing.  Though neither party has raised this issue, "federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citation and internal quotations omitted) (alteration in original); *see also Juidice v. Vail*, 430 U.S. 327, 331 (1977).

The jurisdiction of a federal court is limited to cases and controversies under Article III of the United States Constitution.  U.S. Const. art. III, § 2.  Standing to sue, therefore, "ensure[s] that federal courts do not exceed their authority." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  To establish constitutional standing at the motion to dismiss stage, Plaintiffs must plausibly allege that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*  Plaintiffs bear the burden of establishing these elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "Where, as here, a case is at the pleading stage, [Plaintiffs] must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

3

To establish an injury-in-fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court has held that when a party has "set forth no specific facts demonstrating" the alleged injury, such allegations "are necessarily conjectural." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412, 420 (2013) (finding that plaintiffs did not have standing when they "present[ed] no concrete evidence to substantiate their fears" and could "only speculate" as to whether an injury might have occurred or will occur in the future).

## III. DISCUSSION

As discussed above, Plaintiffs allege that they have been injured in several ways. For one, they allege that the products at issue "are of lower quality, softness, comfort, durability, and longevity than they otherwise would [be] if they were the represented thread count and quality as stated on the labeling and price tags." (*Id.* ¶ 85.) Further, they claim that they "paid more for bedding and linen products which Defendants represented had inflated thread counts." (*Id.* ¶ 94; *see also id.* ¶ 13 (alleging that "inflated thread counts induced Plaintiffs . . . to purchase Defendants' products when Plaintiffs and other members of the Class would not have purchased them, or would have paid a lower price").)

With regards to the "lower quality, softness, [and] comfort" of the sheets in question, Plaintiffs fail to provide any information that would allow the Court to assess such claims. They have not provided nor even alluded to any standard with which to evaluate whether a sheet is of lower quality, or whether it is softer or more comfortable to the consumer. They do not even attempt to compare their purchases with sheets they deem to accurately display

4

corresponding thread counts to suggest that one is softer, for instance, as a result of its higher number of threads. The same is true with respect to durability and longevity. Not only do Plaintiffs likewise fail to offer any standard by which to measure these claims, they do not even allege that the sheets in question have deteriorated in any way, nor do they provide any information on how long the sheets must continue to serve their purpose in order to be appropriately long-lasting.

With regards to paying a higher price for their sheets, Plaintiffs once again fail to allege any facts beyond the blanket assertion that they have overpaid. They decline to compare, for instance, the price they paid to the prices of any sheets with a corresponding thread count they deem to be accurate. They likewise decline to compare the price of their sheets to those with a lower thread count. Plaintiffs fail, in one instance, even to allege any price they paid and/or the size of the sheets they purchased so that a comparison may be made. (*See* ECF No. 15 ¶ 33.) The only information before the Court with regards to pricing is a graph showing an "informal survey" of "cotton king-size bedding sets." (*Id.* ¶ 67.) Though it does not appear that any of the Plaintiffs who purchased sheets from Macy's bought "cotton king-size bedding sets" as depicted in the graph, it bears mention that every bedding set Plaintiffs bought from a Macy's store was purchased for less than half the price of the Macy's 300-thread-count set displayed on the graph and lower than every set shown for this particular retailer. (*See id.* ¶¶ 39, 43, 47, 67.)

Finally, the Court observes that Plaintiffs fail to make any allegations as to the actual thread count of the sheets they purchased. Instead, they contend that "Defendants have exclusive knowledge concerning the actual thread count" and that "[c]onsumers, including

5

Plaintiff, have no realistic means of determining the actual thread count of the bedding and linen products." (*Id.* ¶¶ 204, 206.) It is therefore unclear to the Court on what basis they rest their blanket allegations that the thread counts are inaccurate. This omission is further underlined by Plaintiffs' statement that they likewise have "no realistic means of determining . . . the corresponding quality, durability, longevity, fitness, softness, comfort and other characteristics associated with sheets or linen products of that represented thread count." (*Id.* ¶ 206.) This again begs the question of how Plaintiffs reached their conclusion that they had been injured. If they have no knowledge of the actual thread count and have not been able to ascertain whether the quality of the products they have purchased is inferior, then they are left with a mere suspicion that Defendants have labeled their sheets fraudulently. This is an insufficient basis on which to file a complaint in federal court.

In sum, Plaintiffs have provided no facts to support that the sheets in question contain fewer threads than what is displayed on the labels. Nor have Plaintiffs presented any facts that the sheets are of lower quality, not as long-lasting, or less soft, durable, or comfortable than a comparable—or any other—sheet set. Supreme Court precedent bars the type of speculation and conjecture one must undertake to reach Plaintiffs' conclusion that they have nevertheless been injured, and therefore the Court declines to participate in such an exercise. Instead, the Court finds that Plaintiffs have failed to plausibly allege that they have suffered an injury-in-fact and thus Plaintiffs have no standing to bring this action.

Based on the above, the Court enters the following:

6

## ORDER

IT IS THEREFORE ORDERED that Plaintiffs' Amended Complaint, (ECF No. 15), is DISMISSED for LACK OF STANDING.

IT IS FURTHER ORDERED THAT Defendants' Motion to Dismiss Amended Complaint for failure to state a claim, (ECF No. 18), is DENIED as MOOT.

IT IS FURTHER ORDERED that Defendants' Partial Motion to Dismiss Amended Complaint for Lack of Subject-Matter Jurisdiction, (ECF Nos. 129), is DENIED as MOOT.

This, the 17th day of March 2021.

/s/ Loretta C. Biggs
United States District Judge