IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:19-cv-00983-LCB-JLW

| | |
|---|---|
| AMY HILL, DOMINIQUE MORRISON, SARA HAWES, CASSANDRA CHIARALUCE, and JONATHAN FONTAINE, individually, and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>AQ TEXTILES LLC and CREATIVE TEXTILE MILLS PVT. LTD.,<br><br>      Defendants. | **BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND FIRST AMENDED COMPLAINT** |

COMES NOW Defendant AQ Textiles, LLC ("AQ"), through counsel, and submits this Brief in opposition to Plaintiffs' Motion to Amend First Amended Complaint (the "Motion"), ECF No. 36.

**NATURE OF MATTER BEFORE THE COURT**

This case is over. After AQ filed two separate motions seeking dismissal of the claims asserted in Plaintiffs' First Amended Complaint (ECF No. 15; corrected ECF No. 17), the Court dismissed those claims pursuant to a Memorandum Opinion and Order dated March 17, 2021 (the "Dismissal Order"), ECF No. 35. Following the entry of that order, no further active claims remained, and the case was closed.

Unwilling to accept that outcome, Plaintiffs have now filed a belated Motion for leave to again amend their pleading. They make that Motion pursuant to Rules 15 and 60

of the Federal Rules of Civil Procedure. Plaintiffs are not entitled to relief under either rule because the amendments they propose to make entirely fail to address the Court's rationale for dismissing their claims. Moreover, Plaintiffs fail to explain why they failed to seek such amendment <u>prior</u> to their claims being dismissed, rather than waiting until after dismissal (and months after AQ's two motions to dismiss had been fully briefed), an undue and prejudicial delay that provides an independently sufficient ground to deny their motion. Finally, the proposed amendment is futile, because even with Plaintiffs' proposed amendment their claims remain deficient for the reasons identified by the Court in the Dismissal Order and those raised by AQ in its motions to dismiss. Plaintiffs' Motion should therefore be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 23, 2019, Plaintiffs Hill and Morrison filed their Complaint (ECF No. 1). Plaintiffs claimed that the thread counts of sheets they purchased, which were imported and distributed (though not sold to them) by AQ, were artificially inflated. After AQ filed a motion to dismiss for failure to state a claim, Plaintiffs filed their Amended Complaint on December 12, 2019 (ECF No. 15), which added (1) new Plaintiffs Hawes, Chiaraluce, and Fontaine; (2) factual allegations related to the new Plaintiffs' purchase of sheets; and (3) claims and purported classes deriving from three additional states. A second version of the Amended Complaint (ECF No. 17) was filed to correct an error in the paragraph numbering.

On January 9, 2020, AQ filed a renewed motion to dismiss and supporting brief. *See* ECF Nos. 18, 19. Plaintiffs filed a responsive brief on March 2, 2020 (ECF No. 24),

and AQ filed a reply on March 16, 2020 (ECF No. 25). On September 25, 2020, AQ filed a second, partial motion to dismiss for lack of standing to the extent the named Plaintiffs sought to maintain class claims for products other than the ones they purchased, along with a supporting brief (ECF Nos. 29, 30). Plaintiffs filed a response on November 16, 2020 (ECF No. 33), and AQ filed on a reply on November 30, 2020 (ECF No. 34).

The Court entered the Dismissal Order on March 17, 2021. *See* ECF No. 35. In that Order, the Court dismissed all of Plaintiffs' claims for a lack of standing due to failure to sufficiently allege an injury-in-fact and denied AQ's motions as moot. *Id.* at 6. The case was closed the same day. On March 29, 2021, Plaintiffs filed the instant Motion, seeking leave to file a Second Amended Complaint that they attached to the Motion.[1] *See* Proposed Second Am. Compl., ECF No. 36-1. At no point during eleventh months of briefing on those motions to dismiss—or in the roughly four months that passed between the close of briefing and the Court's entry of the Dismissal Order —did the Plaintiffs attempt to amend their First Amended Complaint to address the deficiencies raised by AQ and ultimately found by the Court to be fatal to Plaintiffs' claims.

## **QUESTION PRESENTED**

Should Plaintiffs be allowed to again amend their Complaint following dismissal of this action by the Court, pursuant to Rules 15(a)(2) and 60(b)(6)?

---

[1] Plaintiffs did not file a redline or any comparison showing the specific changes made in the proposed pleading.

## ARGUMENT

Plaintiffs seek two separate forms of relief from the Court: first, they seek relief from the Dismissal Order under Rule 60(b)(6); and second, they seek leave to amend their First Amended Complaint pursuant to Rule 15(a)(2). Neither request should be granted.

### I. Plaintiffs are not entitled to relief under Rule 60(b)(6).

First, Plaintiffs' request for relief under Rule 60(b)(6) must be denied. "Rule 60(b) establishes grounds for relief from a final judgment 'under a limited set of circumstances including fraud, mistake, and newly discovered evidence.'" *Moses v. Joyner*, 815 F.3d 163, 167 (4th Cir. 2016) (quoting *Gonzalez v. Crosby,* 545 U.S. 524, 528 (2005)). In addition to the specifically enumerated grounds for relief, Rule 60(b)(6) "offers a catch-all provision that allows a court to 'relieve a party or its legal representative from a final judgment, order, or proceeding' for 'any other reason that justifies relief.'" *Id.* at 167-68 (citing Fed. R. Civ. P. 60(b)(6)).

"While this catchall reason includes few textual limitations, its context requires that it may be invoked in only 'extraordinary circumstances' when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5)." *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011); *accord Moses,* 815 F.3d at 168 ("[A] showing of 'extraordinary circumstances' is required for a successful 60(b)(6) motion." (quoting *Gonzalez*, 545 U.S. at 535)); *United States v. Salas*, 807 F. App'x 218, 229 (4th Cir. 2020) (unpublished), *cert. denied*, 141 S. Ct. 1103 (2021). In addition, the Fourth Circuit requires a showing "that the party filing the motion have a meritorious claim or defense and that the opposing party not be unfairly prejudiced by having the judgment

4

set aside." *Aikens*, 652 F.3d at 501. "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." *Id.* (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 873 (1988) (Rehnquist, C.J., dissenting)).

The Fourth Circuit Court of Appeals has not explained in detail what might constitute the "extraordinary circumstances" required to set aside a judgment pursuant to Rule 60(b)(6). The Circuit Court has, however, made clear that "strategic decisions made during the course of litigation provide no basis for relief under 60(b)(6)." *Wadley v. Equifax Info. Servs., LLC*, 296 F. App'x 366, 369 (4th Cir. 2008) (unpublished) (quoting *Schwartz v. United States,* 976 F.2d 213, 218 (4th Cir. 1992)). The Court also has consistently held that even a "change in the decisional law on which the district court based its decision" is not sufficient to constitute "extraordinary circumstances." *See id.*; *see also Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) ("[S]uch a change in decisional law subsequent to a final judgment provides no basis for relief under Rule 60(b)(6).").

Here, Plaintiffs fail to show that this case presents the type of "extraordinary circumstances" in which relief under Rule 60(b)(6) would be appropriate. Indeed, they do not even try; their brief does not mention Rule 60(b)(6) other than a single reference to the text of the rule. *See* Pls.' Br. 3. Nor could they make that showing, because there is nothing remotely "extraordinary" about the circumstances of this case. There is no issue of disputed or unclear law; no issue of mistake or fraud; no newly discovered evidence; no unprecedented or rarely encountered procedural posture that worked to Plaintiffs' detriment. Instead, AQ moved to dismiss Plaintiffs' claims; the Court found those claims

5

wanting for lack of standing due to a failure to sufficiently allege a cognizable injury; and Plaintiffs now wish to revive their claims by seeking the Court's leave to make belated amendments pursuant to Rule 15(a)(2). Whatever is required to demonstrate "extraordinary circumstances," this case is not that. Instead, Plaintiffs seek relief from "strategic decisions made during the course of litigation"—specifically, their decision not to seek leave for additional amendment prior to judgment being entered.

Nor have Plaintiffs shown that they have a "meritorious claim or defense" with respect to the subject matter of the Court's Dismissal Order. Plaintiffs do not claim that the order was incorrect, unfounded, procedurally improper, or otherwise erroneous. They do claim that the amendment they seek to make is sufficient to make their claims meritorious, and is therefore not futile; as discussed below with respect to the Rule 15 portion of the motion, however, that is not the case.

Finally, as addressed in further detail below, Plaintiffs have not shown that a grant of the relief they seek under Rule 60(b)(6) would not prejudice AQ. AQ has already been forced to incur the time and expense of responding to the original Complaint and the First Amended Complaint, each time filing and briefing motions to dismiss. Now an undoing of the dismissal and requiring AQ to undergo the expense of again moving to dismiss those claims would unquestionably prejudice AQ. *Accord Logar v. W. Virginia Univ. Bd. of Governors*, No. CIV. A. 1:10-CV-201, 2012 WL 243692, at *8 (N.D.W. Va. Jan. 25, 2012) ("The defendants have an interest in the finality of the judgment in their favor and would

be prejudiced if they were unable to rely on such a judgment.), *aff'd*, 493 F. App'x 460 (4th Cir. 2012).

In sum, Plaintiffs do not argue that this case presents the "extraordinary circumstances" necessary for relief under Rule 60(b)(6), and cannot show that such circumstances exist. The Court should therefore deny their request for relief from the Court's Dismissal Order.

## II. The Court should not grant leave to amend under Rule 15(a)(2).

Plaintiffs also ask the Court for leave to belatedly amend their First Amended Complaint under Rule 15(a)(2). That rule allows for amendment "when justice so requires." The Fourth Circuit has explained that

> [t]he Supreme Court has construed the phrase "when justice so requires" in Rule 15(a) to preclude granting leave to amend when any of the following are found to exist: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.''

*Umanzor-Lazo v. U.S. I.N.S.*, 178 F.3d 1286, 1999 WL 274075, at *3 (4th Cir. 1999) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)); *see also DeWitt v. Hutchins*, 309 F. Supp. 2d 743, 748 (M.D.N.C. 2004) ("[L]eave to amend shall be freely granted when justice requires unless there are valid reasons for denying leave, such as undue delay, bad faith or futility of the amendment." (citing *Foman*)).

While Plaintiffs assert, citing *Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006), that the Fourth Circuit's practice "is to liberally allow amendment, even after dismissal" (Pls.' Br. 2), they fail to acknowledge that "motions filed post-judgment for leave to amend a

complaint are not favored under law." *Laber*, 438 F.3d at 432 (Wilkinson, J. concurring).[2]

That is because "[i]t takes a great deal of time and effort for a party to win any judgment"

and "[t]his effort should not be routinely undone after a decision of the district court alerts

a losing party to the deficiencies in its case." *Id.* at 432–33 (Wilkinson, J. concurring).

Here, Plaintiffs' request for leave to amend should be denied for several reasons,

including undue delay, prejudice to AQ, and futility.

### a. Denial of Plaintiffs' request for relief under Rule 60(b)(6) is fatal to their request for leave to amend.

First, as a preliminary matter, the Court cannot grant leave to amend pursuant to

Rule 15 if it denies Plaintiffs' request for relief from the judgment pursuant to Rule

60(b)(6). That is because a district court "may not grant [a] post-judgment motion [for

leave to amend] unless the judgment is vacated pursuant to Rule 59(e) or Fed. R. Civ. P.

60(b)." *Laber*, 438 F.3d at 427; *see also Cooper v. Shumway*, 780 F.2d 27, 29 (10th Cir.

1985) ("[O]nce judgment is entered the filing of an amended complaint is not permissible

until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)."); *Jacobs*

*v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344–45 (11th Cir. 2010) (holding that Rule

15(a) "has no application *after* judgment is entered"). Because, as discussed above,

---

[2] *See also,, e.g., Benzon v. Morgan Stanley Distribs., Inc.,* 420 F.3d 598, 613 (6th Cir.2005) (noting that "in the post-judgment context" the court "must also take into consideration the competing interest of protecting the finality of judgments and the expeditious termination of litigation" (citation and internal quotation marks omitted)); *Vielma v. Eureka Co.,* 218 F.3d 458, 468 (5th Cir. 2000) (noting that the district court's discretion to allow amendments "narrows considerably after entry of judgment"); *Twohy v. First Nat. Bank of Chicago*, 758 F.2d 1185, 1196 (7th Cir. 1985) ("[J]ustice may require something less in post-judgment situations than in pre-judgment situations under Rule 15(a).").

Plaintiffs have failed to show that they are entitled to relief under Rule 60(b)(6), their request for leave to amend under Rule 15(a)(2) must be denied for that reason alone.

### b. Plaintiffs unduly delayed in moving for leave to amend.

Consistent with Supreme Court precedent, both this Court and the Fourth Circuit have recognized that undue delay in seeking amendment is a sufficient basis to deny a motion for leave to amend. *See, e.g.*, *Umanzor-Lazo*, 1999 WL 274075, at *4 ("Rule 15(a), as construed by the Supreme Court, requires that leave to amend only be granted absent defects such as undue delay and futility, which are both present here."); *R.S. by & through Soltes v. Bd. of Directors of Woods Charter Sch. Co.*, No. 1:16CV119, 2018 WL 339944, at *3 (M.D.N.C. Jan. 9, 2018) (denying leave to amend where "there is no justification for the undue delay in this case").

Multiple circuit courts have recognized that leave to amend can be denied where the plaintiff unduly delays filing a motion until after judgment. *See, e.g.*, *Badillo-Santiago v. Naveira-Merly*, 378 F.3d 1, 7–8 (1st Cir. 2004) (refusing to allow amendment where plaintiff waited until "almost one month after the court had ruled on the defendants' motions to dismiss" to seek leave to amend); *Vielma v. Eureka Co.*, 218 F.3d 458, 468 (5th Cir. 2000) ("In cases where a party seeks to amend her complaint after entry of judgment, we have consistently upheld the denial of leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling." (citation and internal quotation marks omitted)); *Twohy v. First Nat'l Bank of Chicago*, 758 F.2d 1185, 1196 (7th Cir. 1985) (stating that "delay in presenting a post-judgment amendment when the moving party had an opportunity to

9

present the amendment earlier is a valid reason for a district court not to permit an amendment").[3]

The district court decision in *Logar*, cited above, is instructive. In *Logar*, the district court granted the defendants' motions to dismiss on the basis of the statute of limitations (which the court converted *sua sponte* into motions for summary judgment) and dismissed all of plaintiffs' claims. *Logar*, 2012 WL 243692, at *1. Following dismissal, the plaintiffs moved for relief under Rules 59(e) and 15(a)(2), seeking leave to make amendments which they contended would avoid the statute of limitations issues that resulted in dismissal. *Id.* The district court denied the motion because, *inter alia*, "plaintiffs were aware of the claims they now seek to add long before they sought leave to amend their prior-dismissed complaint." *Id.* at *6. The district court therefore concluded that "the delay in moving for leave to amend is undue and without adequate explanation" and denied the motion. *Id.* at *7. The Fourth Circuit affirmed that decision on appeal, finding that the district court's denial of leave to amend was not an abuse of discretion. *Logar v. W. Virginia Univ. Bd. of Governors*, 493 F. App'x 460, 463 (4th Cir. 2012).

Here, there is no question that Plaintiffs unduly delayed in waiting more than eighteen months after the filing of their initial Complaint, fifteen months after the filing of their First Amended Complaint, fourteen months and sixth months, respectively, after

---

[3] The leading commentator has similarly observed: "A number of courts, exercising their discretion under Rule 15(a), also have refused to allow a postjudgment amendment when the moving party had an opportunity to assert the amendment during trial but waited until after judgment before requesting leave; these courts base their conclusions on the moving party's unreasonable delay." 6 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure Civil</u> § 1489, Westlaw (database updated April 2021) (collecting cases).

AQ's filing of separate motions to dismiss the First Amended Complaint, and, most importantly, until <u>after</u> entry of the Dismissal Order to seek leave for further amendment. At no time during the fourteen months that elapsed between Plaintiffs first moving to dismiss the First Amended Complaint and the entry of the Dismissal Order did Plaintiffs suggest that they desired to amend their pleading in the event the Court found it insufficient. Plaintiffs do not even attempt to explain or justify that delay in their Motion, leaving no other conclusion than that they made the conscious decision not to amend earlier in hopes that the additional facts they now seek to add would not be necessary.

Nor could Plaintiffs possibly argue that the facts they now seek to add could not have been added sooner. For example, Plaintiffs propose to add new allegations regarding a letter sent by the Texas Department of Agriculture to AQ attaching supposed thread-count test results for the sheets. *See* Proposed Second Am. Compl. ¶¶ 7-9, 98-101. This information was not recently discovered; in fact, Plaintiffs referenced this exact information in a brief filed on November 16, 2020. *See* Pls.' Resp. in Opposition to Partial Mot. to Dismiss, ECF No. 33, at 3 n.1. That brief, in turn, cited to a brief filed on October 26, 2020, in a separate case in this Court, brought by the same attorneys who represent Plaintiffs in this lawsuit. *See Adam v. AQ Textiles, LLC*, Case No. 1:20-cv-520 (M.D.N.C.), ECF No. 14. In fact, nearly identical allegations appear in the initial complaint in that action, which was filed on June 11, 2020, more than <u>nine months</u> before Plaintiffs moved for leave to amend in this case. *See* Complaint ¶¶ 6-8, 83-86, *Adam v. AQ Textiles, LLC*, Case No. 1:20-cv-520 (M.D.N.C.), ECF No. 1.

11

Similarly, Plaintiffs seek to add allegations stating the supposed "true" thread count of the sheets purchased by Plaintiffs Hawes and Morrison. *See* Proposed Second Am. Compl. ¶¶ 12-13. However, Plaintiffs have unquestionably known this information for years: Plaintiff Morrison alleged the supposed "true" thread count of her sheets (224) in a pleading dated December 4, 2018, in her separate lawsuit against Ross Stores, the retailer from whom she purchased the sheets,[4] and Plaintiff Hawes alleged the supposed "true" thread count of her sheets in a pleading dated November 8, 2017, in her separate lawsuit against Macy's (where she purchased her sheets).[5]

Plaintiffs also propose to add additional details regarding Plaintiffs' alleged sheet purchases. In particular, they propose to add several details regarding Plaintiff Morrison's purchase of her sheets, particularly related to a higher "comparable price" supposedly stated on the sheets' label. *Compare* Proposed Second Am. Compl. ¶¶ 36-43, *with* Am. Compl. (corrected), ECF No. 17, ¶¶ 33-35. But again, these details largely track those already alleged in Morrison's December 4, 2018 pleading against Ross Stores. Second Am. Compl. ¶¶ 33-37, *Morrison v. Ross Stores, Inc.*, Case No. 4:18-cv-2671 (N.D. Ca.), ECF No. 54.

These examples—only the most glaring—belie any suggestion that Plaintiffs could not have sought leave to make their proposed amendments prior to the entry of the Court's

---

[4] Second Amended Complaint ¶ 39, *Morrison v. Ross Stores, Inc.*, Case No. 4:18-cv-2671 (N.D. Ca.), ECF No. 54.
[5] Complaint ¶ 39, *Hawes v. Macy's Inc.*, Case No. 1:17-cv-754 (S.D. Oh.), ECF No. 1. Hawes alleged that the "true" thread count was 249 in her 2017 complaint but says it is 227 in the proposed Second Amended Complaint; the reason for that difference is unclear.

Dismissal Order.  In fact, they plainly could have added those allegations <u>long</u> before.  But the simple fact is that Plaintiffs have not explained why <u>any</u> of their proposed amendments could not have been made earlier.  Given that failure, the only possible conclusion is that Plaintiffs' delay in moving to amend was unjustifiably undue.  Their Motion therefore must be denied.

### c.  Granting Plaintiffs' motion for leave to amend would prejudice AQ.

Even if the Court were to find Plaintiffs' Motion timely, the motion should still be denied because granting leave to amend after judgment would prejudice AQ.

Again, the district court decision in *Logar* is instructive. In *Logar*, the district court held that "the fact that the plaintiffs delayed in prosecuting claims that were known to them even before the filing of their original complaint, until a time following dismissal of this case stands, in itself, is a representation of substantial prejudice to the defendants." *Logar*, 2012 WL 243692, at *8. That is because "defendants have an interest in the finality of [a] judgment in their favor and would be prejudiced if they were unable to rely on such a judgment." *Id.* The district court also found it significant in the prejudice analysis that the defendants had "expended a significant amount of time and effort" on dispositive motions attacking the sufficiency of the original complaint.  *Id.*

Here, as in *Logar*, AQ would be prejudiced by allowing leave to amend after the dismissal of Plaintiffs' claims. AQ spent substantial time and effort briefing three separate motions to dismiss in response to not only the original Complaint, but also the Amended Complaint. Having obtained a judgment in its favor, AQ would be prejudiced by again having to engage in motions practice against yet another amended complaint; particularly

Case 1:19-cv-00983-LCB-JLW   Document 39   Filed 05/18/21   Page 13 of 20

given, as discussed above, that the allegations Plaintiffs desire to add are ones they could have added well before dismissal of their claims. Plaintiffs should not be permitted to inflate AQ's litigation costs by adding allegations piecemeal, across multiple iterations of the same pleading, with no excuse for having held them back for so long. Accordingly, their request for leave to amend should be denied due to the prejudice AQ would suffer should the motion be granted.

### d. The amendment proposed by Plaintiffs is futile.

Finally, the Court should deny Plaintiffs' motion to amend because the amendment they propose would be futile. AQ previously moved to dismiss Plaintiffs' claims in their entirety for a number of reasons. *See* ECF Nos. 19, 25, 30, 34 (supporting and reply briefs). The Court never formally addressed those motions, denying them as moot. Instead, in its Dismissal Order, the Court dismissed Plaintiffs' claims for lack of standing because they had "failed to plausibly allege that they have suffered an injury-in-fact." Mem. Opinion and Order, ECF No. 35, at 6.

In reaching that conclusion, the Court noted that Plaintiffs posit two damages theories: that they were harmed because the sheets they got were of "lower quality, softness, comfort, durability, and longevity" than they should be, and that Plaintiffs "paid more for bedding and linen products" due to inflated thread counts. *Id*. at 4. As to the former theory, the Court found that Plaintiffs "fail to provide any information that would allow the Court to assess" the quality, softness, comfort, durability, and longevity of the sheets by any objective standard. *Id*. at 4-5. With respect to the latter theory, the Court likewise found that Plaintiff had failed to "allege any facts beyond the blanket assertion

that they have overpaid" and had not made any effort to "compare the price of their sheets to those with a lower thread count." *Id.* at 5.   The Court also noted that Plaintiffs had not made sufficient allegations regarding the "actual thread count" of the sheets they purchased, leaving only the "blanket allegation that the thread counts are inaccurate." *Id.* at 5-6.

The proposed Second Amended Complaint that Plaintiffs attached to their Motion does not sufficiently address these concerns.   Many of the amendments proposed by Plaintiffs appear aimed at addressing the third issue identified by the Court—the failure to specifically allege that the thread counts of the sheets they purchased were inflated. *See, e.g.*, Proposed Second Am. Compl. ¶¶ 8-13, 99-101.   These proposed allegations are still missing key details—for example, an explanation of how, after initially alleging that consumers "have no realistic means of determining the actual thread count,"[6] the Plaintiffs determined the supposed "true" thread counts—and, as explained above, contain facts that were long known to Plaintiffs and could (and should) have been included in earlier pleadings.

More importantly, though, these and the other new allegations made by Plaintiffs entirely fail to address the first two issues that the Court regarding Plaintiffs' alleged injuries.   With respect to the first of Plaintiffs' damages theories—that the sheets they purchased were of "lower quality, softness, comfort, durability, and longevity" than Plaintiffs believed—Plaintiffs' proposed Second Amended Complaint added almost no

---

[6] Amended Complaint (corrected), ECF No. 17, ¶ 232.

new allegations, and the allegations Plaintiffs do propose to add are essentially meaningless. For example, Plaintiffs propose to add new allegations that they believed they were purchasing sheets that were "more comfortable than sheets with lower thread counts." *Compare* Proposed Second Am. Compl. ¶¶ 50, 55, 59, *with* First Amended Complaint (corrected), ECF No. 17, ¶¶ 38, 42, 46. But proposed allegations like these do not correct the defect the Court identified. The issue was not with Plaintiffs' allegations of their <u>expectations</u> regarding the sheets' comfort, quality, or longevity, but with their failure to allege that the sheets <u>actually fell short of those expectations</u> (and, just as important, their failure to identify any <u>objective</u> means of determining whether the sheets failed to live up to those unquantified expectations). Plaintiffs' proposed new allegations do absolutely nothing to remedy that problem.

The same is true with respect to the few proposed allegations meant to bolster the Plaintiffs' theory that they overpaid for their sheets. *See, e.g.*, Proposed Second Amended Complaint, ECF No. 36-1, ¶¶ 41-47, 80-81. Curiously, the first group of these allegations (paragraphs 41-47) add allegations specific to Ms. Morrison—not made with respect to any other Plaintiff—such as the allegation that she "would have paid a lower price" for the sheets if she knew their true value. *Id.* ¶ 42. They also include the allegation that the sheets purchased by Ms. Morrison (and, again, no other Plaintiff) contained a representation that the sheets had a "comparable value" of $100, which Plaintiffs apparently construe as a promise that the sheets Ms. Morrison purchased for $40 would actually be worth $100.[7] *Id.*

---

[7] Plaintiffs do not allege that AQ was responsible for that "comparable value" statement on the price tag. In her pleadings against the retailer of the sheets, Ross Stores, Morrison

¶ 43. Outside of these allegations specific to Ms. Morrison, the only pricing allegations added by Plaintiffs are general allegations that consumers as a whole (not specifically the Plaintiffs here) are often misled by retailers (not specifically by AQ) into paying more for sheets with higher represented thread counts. *Id.* ¶¶ 80-81.

Again, these proposed amendments entirely miss the point. The issue identified by the Court was not that Plaintiffs had insufficiently explained the concept that consumers pay more for sheets with a higher thread count, but that <u>Plaintiffs had failed to credibly allege that they themselves paid inflated prices</u>. As the Court astutely pointed out in the Dismissal Order, the only allegations made by Plaintiffs regarding the prices of any products other than those they purchased entirely undercut the idea that Plaintiffs paid "inflated" prices based on thread-count representations. Mem. Opinion and Order, ECF No. 35, at 5. The proposed Second Amended Complaint does nothing whatsoever to correct this defect. So when Plaintiffs say in their Brief in support of this Motion that "[c]omparatively, Plaintiffs perceived a bargain" (Pls.' Br. 5), they only serve to illuminate the problem: that while Plaintiffs make vague allegations that they overpaid on a "comparative" basis, they entirely fail to allege the facts necessary to <u>actually make that comparison</u>.

In their Brief, Plaintiffs attempt to explain away this problem via a multi-page footnote that elaborates on their theory that Plaintiffs paid a "price premium" based on

---

alleged that <u>Ross</u> "represented that the sheets were worth" that higher value. Second Amended Complaint ¶ 34, *Morrison v. Ross Stores, Inc.*, Case No. 4:18-cv-2671 (N.D. Ca.), ECF No. 54.

thread-count representations.[8] Pls.' Br. 5-6 n. 2. The discussion in that footnote, however, is not connected to any new allegations Plaintiffs propose to add in the Second Amended Complaint. There was only a single reference in the First Amended Complaint to Plaintiffs paying a "premium" for their products (Amended Complaint, ¶ 194) and only that same single reference in the proposed Second Amended Complaint (ECF No. 36-1, ¶ 207). Given that Plaintiffs have not added any new allegations at all related to their "price premium" theory—and that their proposed Second Amended Complaint remains devoid of any allegations that, even if true, would be sufficient to establish the existence of such a premium—footnote 2 of their Brief is irrelevant for purposes of this Motion and insufficient to address the standing defect identified by the Court.

Finally, even if Plaintiffs' new allegations were sufficient to address the standing defects identified by the Court in the Dismissal Order, they entirely fail to address the arguments raised in the briefs supporting AQ's two separate motions to dismiss. *See* ECF Nos. 19, 25, 30, 34. Should Plaintiffs be granted leave to amend, AQ would reassert those same grounds for dismissal, and Plaintiffs' claims would still be doomed. Accordingly, the amendment sought by Plaintiffs is futile for that additional reason.

---

[8] In this footnote, Plaintiffs apparently refer to the damages framework proposed by Stefan Boedeker, an expert retained by Plaintiff Hawes in her parallel suit against Macy's. The defendant in that case has moved to strike Boedeker's proffered opinions on several grounds, including that he omits key variables and has not actually constructed the theoretical damages model he proposes. *See* Mot. to Strike and Exclude Opinions of Mr. Stefan Boedeker, *Hawes v. Macy's Inc.*, Case No. 1:17-cv-754 (S.D. Oh.), ECF No. 91 Indeed, at least one other court struck proposed opinions from Boedeker regarding damages theories like those discussed in footnote 2 of Plaintiffs' Brief. *See MacDougall v. Am. Honda Motor Co.*, No. SACV 17-1079 JGB (DFMx), 2020 WL 5583534, at *6 (C.D. Cal. Sept. 11, 2020).

In sum, the amendment Plaintiffs propose to make fails to address the key defects identified by the Court in the Dismissal Order and by AQ in its motions to dismiss. The proposed amendment is therefore futile, and Plaintiffs' Motion should be denied.

## CONCLUSION

Plaintiffs have failed to demonstrate that they are entitled to relief under either Rule 60(b)(6) or Rule 15(a)(2). Accordingly, their attempt to belatedly save their claims via amendment must fail and their Motion must be denied.

This the 18th day of May, 2021.

/s/ Andrew L. Rodenbough
Jennifer K. Van Zant (N.C. Bar # 21280)
Andrew Rodenbough (N.C. Bar # 46364)
Ryan C. Fairchild (N.C. Bar # 47729)
BROOKS, PIERCE, McLENDON
 HUMPHREY & LEONARD, LLP
P.O. Box 26000
Greensboro, NC 27420
Telephone:     (336) 373-8850
Facsimile:     (336) 378-1001
jvanzant@brookspierce.com
arodenbough@brookspierce.com
rfairchild@brookspierce.com

*Attorneys for Defendant AQ Textiles, LLC*

## CERTIFICATE OF WORD COUNT

I hereby certify that this Brief complies with Local Rule 7.3(d)(1) in that it does not

exceed 6,250 words in length, including the body of the brief, headings, and footnotes.

This the 18th day of May, 2021.

/s/ Andrew L. Rodenbough
Andrew L. Rodenbough