THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:19-cv-00983-LCB-JLW

DOMINIQUE MORRISON, SARA HAWES,
CASSANDRA CHIARALUCE, and
JONATHAN FONTAINE, individually, and
on behalf all others similarly situated,

    Plaintiffs,

**v.**

AQ TEXTILES LLC, and
CREATIVE TEXTILE MILLS PVT. LTD.,

    Defendant.

**PLAINTIFFS' REPLY
IN FURTHER SUPPORT OF
MOTION TO AMEND FIRST
AMENDED COMPLAINT**

Plaintiffs submit this reply in further support of motion and for leave to amend First Amended Complaint ([DE 36]). In response, Defendant erroneously argues: (1) Plaintiffs must demonstrate "extraordinary circumstances;" (2) relief must first be granted under Rule 60(b); (3) Undue delay; (4) Prejudice though no judgment was obtained; and (5) Futility.

*1. Extraordinary Circumstances is Not Required.*

Defendant's assertion Plaintiffs must show "extraordinary circumstances" is a red herring. Cases cited requiring extraordinary circumstances are inapposite, largely criminal, and concern motions filed many months, years, or even decades after expiration of appeal rights; certainly not a "reasonable time" under rule 60(b)(6).[1]

---

[1] *See Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) (filed six (6) months later); *Wadley v. Equifax Info. Servs., LLC*, 296 Fed. Appx. 366, 368 (4th Cir. 2008) (filed two (2) years after summary judgment); *Gonzalez v. Crosby*, 545 U.S. 524, 526 (2005) (filed twelve (12) years later); *United States v. Salas*, 807 Fed. Appx. 218, 229 (4th Cir. 2020)

1

Plaintiffs filed their Rule 60(b) motion seeking to amend the complaint twelve (12) *days* after entry of the Court's Order. *See Order* [DE 35]; *Motion* [DE 36]. Plaintiffs' prompt motion tolls the time for appeal until after the Court disposes of it. Fed. R. App. P. 4(a)(4)(A). As the Court is aware, when a plaintiff seeks to amend a complaint after judgment or dismissal, coupled with a Rule 60 or 59 motion, the Court need not concern itself with those rules' legal standards; the Court "need only ask whether the amendment should be granted" under Rule 15. *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471-72 (4th Cir. 2011);[2] *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 651 (4th Cir. 2007) (holding the district court erroneously applied Rule 59 standard to motion to amend that accompanied a Rule 59 motion rather than Rule 15 standard).

## 2. Relief First Under Rule 60 Is Unnecessary

Defendant's argument that relief must be granted under Rule 60 misstates the law. *See supra* Part 1. In *Logar*, cited heavily by Defendant (*See* [DE 39, pp.6, 10, 13]), the Court held the standard to be employed is Rule 15, not Rule 60.[3] Noticeably absent from

---

(holding "untimely appeal" filed sixteen (16) years later), *cert. denied,* 141 S. Ct. 1103, 208 L. Ed. 2d 550 (2021); *Moses v. Joyner*, 815 F.3d 163, 165 (4th Cir. 2016) (filed seventeen (17) years later).

[2] Rule 15 standard is to "liberally allow amendment" (*Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)), absent "prejudice, bad faith or futility." (*Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)).

[3] *Logar v. W. Virginia Univ. Bd. of Governors*, No. CIV.A. 1:10CV201, 2012 WL 243692, at *4 (N.D.W. Va. Jan. 25, 2012) ("the standard to be employed is simply that of Rule 15. The Court must [] decide whether to grant leave to amend, and if leave is appropriate, the original judgment should be vacated.") *aff'd,* 493 Fed. Appx. 460 (4th Cir. 2012); *See Katyle*, *supra*. (holding postjudgment motion to amend pursuant to rule 59 or 60, the "court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to [Rule 15].").

Defendant's inaccurate recitation of *Logar* is the facts because after converting the defendants' motions to dismiss to summary judgment, the district court granted judgment to defendants and dismissed the case with prejudice because of the statute of limitations. *Id*. at *1. Following judgment, the plaintiffs tried to cure deficiency by belatedly adding a contract claim to escape limitations period. Critically, unlike in this matter, plaintiffs were on notice of the defect for months. *Id*.

Plaintiffs did not add new claims in a belated attempt to circumvent Defendant's Rule 12(b)(6) arguments. Instead, Plaintiffs, as discussed previously ([DE 37, pp.4-5]), added allegations including external analysis, independent testing, type, price, date purchased, and representations made. The Court seemed concerned injury in fact was not adequately alleged because of descriptions the bed sheets were of lower quality, with fewer thread count. [DE 35, p.6]. The Court thus denied Defendant's motions as moot, dismissing the action solely for lack of standing. [DE 35, p.7]. Unless otherwise stated, dismissal for lack of standing is not on the merits. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of standing … must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits."). Thus, the sole question now is the propriety of amendment pursuant to Rule 15, not legal standard attached to Rule 60. *Katyle*, *supra*.; *Logar* at *4.

### 3. No Undue Delay

Defendant incorrectly conflates judgment with lack of standing, and repeatedly cites cases where amendments were denied after adjudication on the merits and appeal rights

3

Case 1:19-cv-00983-LCB-JLW   Document 40   Filed 06/01/21   Page 3 of 14

expired. *See supra* Part 1; *Logar*, *supra*.; *See Defendant's Brief* [DE 39, pp.9-10]. Here, appeal is preserved pending disposition of this motion.

Curiously, Defendant attacks Plaintiffs' reference to *Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) (en banc) by mentioning Judge Wilkinson's concurrence. [DE 37, p.8]. In *Laber*, the Fourth Circuit reversed summary judgment with instructions to allow amendment. *Laber* at 432. But here, judgment was not won. While Defendant worked to defeat Plaintiffs' complaint, the Court ruled on other grounds without reaching the merits. From a procedural standpoint, Plaintiffs could not have unduly delayed amendment. It is not unusual for a plaintiff to seek amendment after dismissal, and many dismissal orders expressly provide for such. *See e.g., In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 749 (4th Cir. 2021).

Here, Plaintiffs proceeded with belief the complaint's allegations were sufficient to meet jurisdictional requirements and no curing of any standing issues via amendment of the pleadings was necessary. Defendant did nothing to alter that belief. The Court, however, perceived the complaint to be lacking sufficient allegations of injury in fact. Plaintiff's motion and proposed amended complaint does not swap or change claims, but instead adds facts not previously pled for clarity. *See Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 118 (4th Cir. 2013) (granting leave where amendment "merely elaborates on an allegation in the original complaint.").

Next, Defendant cites to allegations made in other actions against the retailers that sold Defendants' products in attempt to show, because the allegations were made in those actions, not originally making them here constitutes undue delay. *See* DE 39 at 12.

4

Defendant simply points to the existence of these allegations as evidence of prejudice in the timing of the amendment, with no case law or rational to support its legal suggestion. Ironically and tellingly, Defendant's knowledge of the existence of these allegations elsewhere defeats or at the very least weighs *against* any claim of undue delay in seeking amendment – since the facts "are well known" to Defendant. *See Atl. Bulk Carrier, Corp. v. Milan Express Co.*, Civil Action No. 3:10cv103, 2010 U.S. Dist. LEXIS 74995, at *14 (E.D. Va. July 23, 2010) (citing Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 280 (4th Cir. 1987) ("The motion did not, therefore, take the defendant by surprise or require it to investigate a claim of which it was not already cognizant.")).

### 4. No Prejudice to Defendant

Inevitably, prejudice exists in any motion adverse to the opposing party. But, Plaintiffs' motion to amend does not unduly prejudice Defendant. To date, Defendant moved to dismiss the complaint twice. Defendant has not incurred expenses serving an answer, initial disclosures, discovery or any other typical litigation costs. The case is still in its infancy at the pleadings stage.

Plaintiffs, much like *Aikens*, *supra*, could have elected to file a new action arising out of the same facts and under the same laws. As much as Defendant wishes to assert prejudice, the granting of this motion and amendment will serve judicial economy more than filing an entirely new case. The case is already filed and served. The Parties are before the Court and on notice of the claims. There has been no Rule 16 conference. The Court is familiar with the allegations, and Defendant's counsel is well versed in the facts and similar cases elsewhere. *See Defendant's Brief* [DE 39, p.12 & fns 4-5, 7-8]; *see also Davis v.*

5

*Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir. 1980) (finding no prejudice where defendant was made fully aware of the events giving rise to the action). Thus, there is far less prejudice in Plaintiffs seeking leave to amend than in filing a new action.

## 5. Proposed Amended Complaint is Not Futile

In the absence of prejudice,[4] Defendant must show the proposed amended complaint is futile. *See supra* fn. 1 (amendment should be liberally allowed absent prejudice, bad faith or futility). Only if the Court determines that the proposed amended complaint would not "satisfy the requirements of the federal rules" would the amended complaint be futile.[5]

Plaintiffs previously detailed changes to the Proposed Amended Complaint, which address the Court's concern over adequately alleging injury in fact. *See* [DE 37, pp.4-6]. This case is not about softness or comfort. Plaintiffs allege Defendant misled consumers with inflated thread counts, deviated from industry standards in such counts, and profited from falsely advertised bedding products. *See e.g., Proposed Amended Complaint* [DE 36-1 *¶¶2,4,5-8 & 10*]. Plaintiffs purchased falsely advertised and labeled products at inflated prices. *Id. at ¶¶187, 240, 279*. More importantly, Plaintiffs did not receive what Defendant represented and warranted – i.e., sheets/bedding of a certain thread count (and associated quality and durability) because the actual thread counts do not

---

[4] Defendant has not argued Plaintiffs' motion to amend was in bad faith.

[5] *See Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 471 (4th Cir. 2011) (citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008); *see also In re Triangle Capital Corp. Sec. Litig. at* 750 (the district court found the proposed second amended complaint futile because Plaintiff did not allege a required element, denying motion to amend).

6

"conform to the promises" made on the sheets' labels. *Id.* at ¶¶2,5,164-68,177-79. And they paid more due to misrepresentations. As a result, Plaintiffs were injured. In the parallel actions against retailers Ross and Macys (pending respectively in the Northern District of California and Southern District of Ohio), both courts found the same or similar allegations sufficient to plead injury in fact and standing.[6]

As Defendant acknowledges (*Defendant's Brief* p.18), in *Hawes v. Macy's Inc.*, Case No. 1:17-cv-754 (S.D. Oh.) ("*Macy's*"), ECF No. 84, where the motion for class certification is currently pending, Plaintiffs note Macy's produced electronic data regarding each of the CVC sheets at issue containing sufficient detail regarding each product's attributes for an economist to perform analysis to quantify the difference between the price of the products as sold using the non-standard thread counts and price the products should have commanded had thread counts been properly stated under the standard counting method. *Macy's* at p.9. This is in line with traditional measure of damages in consumer deception cases (including warranty claims)—and the measure of damages Plaintiffs seek here—the difference between the price paid and the value received by consumers who bought under deception. Like *Macy's*, Plaintiffs' expert economist will also set forth methods by which he/she will conduct analysis on a class-wide basis and use

---

[6] *See Morrison v. Ross Stores, Inc. et. al.*, Case No. 4:18-cv-02671(N.D.Ca.) ECF Doc. 63 ("Plaintiff alleged sufficient facts from which the Court could find plaintiff has standing ... [and] common law breach of warranty claims."); *Hawes v. Macys Inc., et.al.,* Case No. 1:17-cv-00754 (S.D.OH.) ECF Doc. 39( "…Macy's argument that Plaintiffs lack standing is put to bed until the class certification stage… Court finds that Plaintiffs have alleged facts demonstrating that a reasonable consumer could be misled by Macy's thread count misrepresentations, and Plaintiffs have alleged those facts with sufficient specificity.)

widely accepted methods to determine the price difference: a hedonic regression and a conjoint analysis. *See, e.g., In re FCA US LLC Monostable Electronic Gearshift Litig.*, MDL No. 2744, 382 F. Supp. 3d, 687, 696-699 (E.D. Mich. 2019) (recognizing regression and conjoint analyses are appropriate methods for determining class-wide damages); *accord In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 724, 753-754 (N.D. Ohio 2014). In other words, he or she will show not only show Plaintiffs have been damaged (as properly alleged), but will also do so on behalf of the putative class.

Conjoint analysis is *widely accepted* as a reliable economic model for estimating damages on an aggregate basis in consumer deception cases involving false and misleading representations or claims of a product's attributes on the product's label. *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1110 (N.D. Cal. 2018) ("[C]onjoint analysis is widely-accepted as a reliable economic tool for isolating price premia."). And thus "numerous courts . . . have accepted [CBC] as [a] reliable methodology[y] for calculating price premiums on a class wide basis in consumer class actions." *Miller v. Fuhu Inc.*, No. 2:14-CV-06119-CAS-AS, 2015 WL 7776794, at *21 (C.D. Cal. Dec. 1, 2015). In the last five years, a majority of federal courts across the country have approved the use of conjoint analysis to calculate damages in consumer class cases.[7] As one court explained:

---

[7] *Flynn v. FCA US LLC*, 327 F.R.D. 206, 225 (S.D. Ill. 2018); *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17-cv-2335, 2018 WL 6300479, at *15–16 (S.D. Cal. Nov. 29, 2018); *Broomfield*, 2018 WL 4952519, at *13-20; *Clay v. CytoSport, Inc.*, No. 15-cv-00165, 2018 WL 4283032, at *13 (S.D. Cal. Sept. 7, 2018); *Hamilton v. TBC Corp.*, 328 F.R.D. 359, 373–74 (C.D. Cal. 2018); *Hadley*, 324 F. Supp. 3d at 1110; *Price v. L'Oreal USA, Inc.*, No. 17-cv-614, 2018 WL 3869896, at *3 (S.D.N.Y. Aug. 15, 2018); *In re Arris*

> [I]n cases where price premia are the relevant measure of damages, courts have repeatedly rejected conjoint analyses that only measure demand-side willingness-to-pay. However, courts have also found that conjoint analyses can adequately account for supply-side factors—and can therefore be utilized to estimate price premia without running afoul of *Comcast*—when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period.

*Hadley*, 324 F. Supp. 3d at 1105; *see also id.* at 1105-06 (collecting cases).

Courts often refer to this difference in value as a "price premium." *See, e.g.*, *Hadley*, 324 F. Supp. 3d at 1113; *Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-01831, 2014 WL 2466559, at *15 (N.D. Cal. May 30, 2014) ("[T]he difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution.").

Furthermore, the plaintiff in *Macy's,* based in-part on her expert's findings, also explained to the court in her motion for class certification that:

> The American Society for Testing and Materials (ASTM) established the required method used by the textile industry. Defendant Macy's West Stores, Inc. (Macy's), however, uses an alternative method favored by its supplier, AQ Textiles (AQ), which violates this standard and results in significantly

---

*Cable Modem Consumer Litig.*, 327 F.R.D. at 374; *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 978 (N.D. Cal. 2018); *Hudock v. LG Elecs. U.S.A., Inc.*, No. 16-cv-1220, 2018 WL 626527, at *4 (D. Minn. Jan. 30, 2018); *Morales v. Kraft Foods Grp., Inc.*, No. LACV1404387JAKPJWX, 2017 WL 2598556, at *26 (C.D. Cal. June 9, 2017); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 551 (E.D.N.Y. 2017); *Dial II*, 320 F.R.D. at 337; *Dzielak v. Whirlpool Corp.*, No. CV2120089KMJBC, 2017 WL 1034197, at *34 (D.N.J. Mar. 17, 2017); *Sanchez-Knutson*, 310 F.R.D. at 539; *Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1083 (D. Minn. 2015); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 1025; *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414-15 (S.D.N.Y. 2015); *Guido*, 2014 WL 6603730, at *14.

> higher thread counts. Plaintiff Sara Hawes claims that Macy's undisclosed use of the nonstandard counting method is deceptive and that Macy's thread count representations contained on its packaging and in its advertising are therefore false and misleading.
> …
> Contrary to the ASTM standard, AQ's counting method requires someone to physically pull the polyester yarns apart to count the individual fibers composing the yarn, whereas the ASTM standard does not provide for such subdivision and uses visual analysis (lenses and microscopes)

*Macy's* at pp.1 & 3. Like in *Macys,* Plaintiffs' expert here will establish that Defendant's sheets were not counted with the ASTM industry standard, but, rather were counted with a method which inflates the thread count of the sheets. Accordingly, as in *Macys,* Plaintiffs and the putative class were deceived by Defendant's represented thread count on the product and overpaid for the products, sustaining injury in fact, which they alleged and will prove as discussed above.

## **CONCLUSION**

For the foregoing reasons, no prejudice exists, and Plaintiffs' amendment only elaborates and clarifies existing allegations. Amendment is not futile because the Amended Complaint states a claim for relief sufficient to survive Rule 12(b)(6) scrutiny.

This the 1st day of June, 2021.

/s/ Scott C. Harris
Scott C. Harris
N.C. Bar No. 35328
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN
900 W. Morgan Street
Raleigh, North Carolina 27603
Phone (919) 600-5000
Facsimile (919) 600-5035

sharris@milberg.com

Charles LaDuca (*To Be Admitted PHV*)
Brendan Thompson (*To Be Admitted PHV*)
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com
brendant@cuneolaw.com

Michael McShane
Ling Y. Kuang (*To Be Admitted PHV*)
Kurt D. Kessler (*To Be Admitted PHV*)
AUDET & PARTNERS, LLP
711 Van Ness Avenue
Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
mmcshane@audetlaw.com
lkuang@audetlaw.com
kkessler@audetlaw.com

Charles Schaffer
LEVIN SEDRAN & BERMAN
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: (877) 882-1011
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

Bruce Steckler (*To Be Admitted PHV*)
Stuart Cochran (*To Be Admitted PHV*)
Kirstine Rogers (*To Be Admitted PHV*)
STECKLER GRESHAM COCHRAN
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: 972-387-4040
bruce@stecklerlaw.com

11

stuart@stecklerlaw.com
krogers@stecklerlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically with the Court's CM/ECF system, which will send notice of filing to all counsel of record.

This the 1st day of June 2021.

/s/ Scott C. Harris
Scott C. Harris
N.C. Bar No. 35328
**WHTFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, North Carolina 27603
Phone (919) 600-5000
Facsimile (919) 600-5035
scott@whitfieldbryson.com

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing complies with the Local Rule 7.3(d)(1) word count, including the body of the brief, headings, and footnotes.

This the 1st day of June 2021.

/s/ Scott C. Harris
Scott C. Harris