IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AMY HILL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19CV983 |
| | ) | |
| AQ TEXTILES LLC, and CREATIVE | ) | |
| TEXTILE MILLS PVT. LTD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is a Motion to Amend First Amended Complaint filed by Plaintiffs. (ECF No. 36.)  Plaintiffs seek relief from the Court's March 17, 2021, Order, (ECF No. 35), and leave to amend their First Amended Complaint pursuant to Rules 15(a) and 60(b) of the Federal Rules of Civil Procedure.  (ECF Nos. 36; 37.)  Defendants oppose the motion, arguing that (1) Plaintiffs have not met the requirements of Rule 60(b)(6), and (2) Plaintiffs' proposed Second Amended Complaint ("PSAC") suffers from undue delay, prejudices Defendants, and is futile.  (ECF No. 39.)  For the reasons stated herein, Plaintiff's motion will be granted in part and denied in part.

## I.  BACKGROUND

Plaintiffs filed this class action on September 23, 2019, (ECF No. 1), and filed a First Amended Complaint ("FAC") on December 12, 2019, (ECF No. 15).  According to the FAC, Plaintiffs Dominique Morrison, Sara Hawes, Cassandra Chiaraluce, and Jonathan Fontaine

Case 1:19-cv-00983-LCB-JLW   Document 42   Filed 01/27/22   Page 1 of 35

purchased bed linens labeled as having thread counts of 800 or more from retail stores in Missouri, California, New Hampshire, and Massachusetts.[1] (*Id.* ¶¶ 33, 37, 41, 45.) The sheets were manufactured by Defendant Creative Textile Mills Pvt. Ltd. ("Creative"), an Indian company, and imported and distributed by AQ Textiles LLC ("AQ"), a North Carolina corporation. (*Id.* ¶¶ 48, 50, 90) Plaintiffs alleged that Defendants represented the sheets to have higher thread counts than they actually had. (*Id.* ¶ 90.) More specifically, they claimed that Defendants ignored the "long-standing industry standards for calculating thread counts," (*id.* ¶ 84) and doubled or tripled "the true thread count" by counting plied yarns not as a single thread, but as the number of intertwined strands from which they are comprised, (*Id.* ¶ 76).

Plaintiffs sued on behalf of themselves and six classes to include consumers in California, Massachusetts, Missouri, New Hampshire, North Carolina, and the nation as a whole who purchased sheets that had lower thread counts than Defendants stated on the products' labels. (*Id.* ¶ 98.) The FAC alleged thirteen causes of action arising under the Magnuson Moss Warranty Act ("MMWA") (Count I); the Implied Warranty of Merchantability (Count II); an Express Warranty (Count III); common law Negligent Misrepresentation (Count IV); Missouri's Merchandising Practices Act (Count V); the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") (Count VI); the California Consumer Legal Remedies Act (Count VII); the California Unfair Competition Law (Counts VIII, IX, & X); the Massachusetts Consumer Protection Law (Count XI); the New Hampshire

---

[1] Plaintiff Amy Hill, also included in the FAC, was voluntarily dismissed from this action on February 8, 2020. (ECF No. 21.)

Case 1:19-cv-00983-LCB-JLW   Document 42   Filed 01/27/22   Page 2 of 35

Consumer Protection Act (Count XII); and common law Unjust Enrichment (Count XIII). (*Id.* at 24–52.)

Defendants moved to dismiss Plaintiffs' FAC for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) on January 9, 2020. (ECF No. 18.) On September 25, 2020, Defendants additionally moved to dismiss the FAC for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). (ECF No. 29.)

On March 17, 2021, the Court dismissed Plaintiffs' claims. *Hill v. AQ Textiles LLC*, No. 1:19CV983, 2021 WL 1026740, at *3 (M.D.N.C. Mar. 17, 2021). The Court found *sua sponte* that Named Plaintiffs had not sufficiently alleged a concrete and particularized injury and, therefore, the Court lacked subject matter jurisdiction. *Id.* at *2–3.

Plaintiffs filed the present motion on March 29, 2021, seeking relief from the Court's Order and leave to again amend their complaint. (ECF No. 36.) In their attached proposed Second Amended Complaint ("PSAC") (ECF No. 36-1), Plaintiffs do not allege any new causes of action but do allege additional facts and limit their proposed classes to include only those consumers who purchased bedding sheets (rather than those who purchased either "bedding or linen"). (*Compare* ECF Nos. 36-1 ¶ 115 *with* 15 ¶ 98.) The factual allegations in Plaintiffs' PSAC include the following:

Plaintiff Fontaine is a resident of Massachusetts. (ECF No. 36-1 ¶ 57.) He purchased Fairfield Square Essex Stay Fit brand queen-size sheets in or around October 2017 from a Macy's retail store in Massachusetts for $84.99 ($79.99 plus tax). (*Id.* ¶¶ 58, 60.) The sheets were manufactured by Defendant Creative and labeled and distributed by Defendant AQ. (*Id.* ¶ 58.) The sheets were labeled "1200 Thread Count." (*Id.*)

3

Plaintiff Hawes is a resident of California. (*Id.* ¶ 48.) She purchased a Somerset Collection brand queen-size sheet set from a Macy's retail store in California in or around May 2017 for $76.11 ($69.99 plus tax). (*Id.* ¶¶ 49, 52.) The sheets were manufactured by Defendant Creative and labeled and distributed by Defendant AQ. (*Id.* ¶ 49.) The sheets were labeled "900 Thread Count." (*Id.*)

Plaintiff Morrison is a resident of Missouri. (*Id.* ¶ 35.) She purchased Grande Estate 800TC Luxurious Sateen Weave sheets from a Ross store in Missouri. (*Id.* ¶ 36.) Plaintiffs estimate that she purchased the sheets for $40.00 in the fall of 2016 or early winter of 2017. (*Id.* ¶¶ 36, 37.) The sheets were manufactured by Defendant Creative and labeled and distributed by Defendant AQ. (*Id.* ¶ 38.) The sheets were represented to have 800 thread count. (*Id.* ¶¶ 39–41.)

Plaintiff Chiaraluce is a resident of Massachusetts. (*Id.* ¶ 53.) She purchased a Bradford Stay Fit brand queen-size sheet set from a Macy's retail store in New Hampshire in or around October 2017 for $69.99. (*Id.* ¶¶ 54, 56.) The sheets were manufactured by Defendant Creative and labeled and distributed by Defendant AQ. (*Id.* ¶ 54.) The sheets were labeled "800 Thread Count." (*Id.*)

After receiving complaints about sheets distributed by AQ, the Texas Department of Agriculture had the thread counts of three AQ products tested in November and December of 2017. (*Id.* ¶ 7.) These tests showed that the Fairfield Square Essex Stay Fit 1200 thread count sheets, the same brand purchased by Plaintiff Fontaine, had an actual thread count of

Case 1:19-cv-00983-LCB-JLW   Document 42   Filed 01/27/22   Page 4 of 35

363 according to industry standards.[2]  (*Id.*)  Similar AQ sheets advertised at 1200 and 800 thread counts had actual counts of 441 and 293, respectively.  (*Id.*)

Plaintiffs Hawes and Morrison then had their sheets independently tested.  (*Id.* ¶¶ 12, 13.)  Hawes's sheets, which were labeled "900 Thread Count," had an actual thread count of approximately 227 according to industry standards.  (*Id.* ¶ 12.)  Morrison's sheets, which were labeled "800 Thread Count," had an actual thread count of approximately 224 according to industry standards.  (*Id.* ¶ 13.)  Plaintiffs allege that they would not have purchased the sheets had they known that the sheets' thread counts were so much lower than represented.  (*Id.* ¶¶ 21, 42, 113, 200.)

## II.    LEGAL STANDARD

Plaintiffs bring their motion pursuant to Rules 60 and 15 of the Federal Rules of Civil Procedure "for relief from the Court's Order and for leave to amend their First Amended Complaint."  (ECF No. 36 at 1 (internal citations omitted).)

### A.    Rule 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure provides that a court "may relieve a party . . . from a final judgment, order, or proceeding" in limited circumstances.  Fed. R. Civ. P. 60(b)(1)–(6).  In the Fourth Circuit, a dismissal without prejudice is not considered a final order or judgment if "the plaintiff could save his action by merely amending his complaint." *Young v. Nickols*, 413 F.3d 416, 418 (4th Cir. 2005) (quoting *Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1066–67 (4th Cir. 1993)); *see Hui Kun Li v. Shuman*, No. 5:14-

---

[2] Plaintiffs define this industry standard, adopted by the American Society for Testing Materials ("ASTM"), at length in the PSAC.  (ECF No. 36-1 ¶¶ 83–88.)

CV-00030, 2015 WL 4274167, at *2 (W.D. Va. July 14, 2015) (finding that, for purposes of Rule 60(b) analysis, the court's dismissal without prejudice of ten counts did "not operate as a final judgment or order from which relief can be granted" where plaintiffs were permitted to amend their complaint). Such a dismissal is not a final order "unless the grounds for dismissal clearly indicate that 'no amendment [in the complaint] could cure the defects in the plaintiff's case.'" *Domino Sugar*, 10 F.3d at 1067 (quoting *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 463 (7th Cir. 1988)).

Here, the Court's March 17, 2021, Order made no finding or determination that an amendment could not cure the defects in the FAC. On the contrary, the Court found that Plaintiffs failed to set forth specific facts demonstrating a concrete and particularized injury, such as facts establishing that Defendants sheets were of lower quality, higher prices, or lower thread count. *Hill*, 2021 WL 1026740, at *2–3. Accordingly, the Court dismissed Plaintiffs' claims for lack of standing—a dismissal that "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013). The Court's Order did not by its terms terminate the action or enter a judgment dismissing the action. Therefore, the Court finds that its previous Order was not a final judgment or order pursuant to Rule 60(b) and is instead an interlocutory order.[3] *See*

---

[3] Even if the Court's Order were construed to be a final judgment, Rule 15(a) would still govern Plaintiffs' motion. A court considering a post-judgment motion to amend a complaint "need not concern itself with [Rule 60(b)'s] legal standards." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011). Instead, "[t]he court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a)," i.e. "for prejudice, bad faith, or futility." *Id.*

*generally Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003) ("Rule 60(b) does not govern relief from interlocutory orders."). As an interlocutory order, it is "subject to reopening at the discretion of the district judge," *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983), at "any time prior to the entry of final judgment," *Am. Canoe*, 326 F.3d at 515 (quoting *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991)). The Court will therefore consider Plaintiffs' motion to amend pursuant to Rule 15(a) to determine if Plaintiffs PSAC could cure the defects reflected in the Court's March 17, 2021, Order.

## B. Rule 15(a)

The determination of whether to grant or deny a motion to amend a pleading under Rule 15(a) lies within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987). Under Rule 15(a), courts should freely grant leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). Indeed, motions to amend are "[s]o useful . . . and of such service in the efficient administration of justice that they ought to be allowed as a matter of course, unless some particular reason for disallowing them appears." *New Amsterdam Cas. Co. v Waller*, 323 F.2d 20, 28–29 (4th Cir. 1963).

"[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)

(citing *Foman*, 371 U.S. at 182). A plaintiff's request to amend a complaint is futile if the proposed amended complaint could not satisfy the appropriate requirements of the Federal Rules of Civil Procedure and Article III. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

## III. DISCUSSION

### A. Plaintiffs' motion was not unduly delayed

Defendants first argue that Plaintiffs' motion should be denied for undue delay. (ECF No. 39 at 9–13.) A district court may deny a motion to amend where "the delay in amending, the late hour of the motion to amend, and the burdens it would impose on the opposing party" counsel denial. *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 604 n.3 (4th Cir. 2010) (citing *Smith v. Angelone*, 111 F.3d 1126, 1135 (4th Cir. 1997); *see also Foman*, 371 U.S. at 182 ("In the absence of any apparent or declared reason—such as undue delay . . . —the leave sought should, as the rules require, be 'freely given.'")

Here, however, there was no apparent delay. Plaintiffs filed their motion just twelve days after the Court dismissed their claims for lack of Article III standing. This quick response suggests "diligence" and "dispels any inference of bad faith" or undue delay. *See Laber*, 438 F.3d at 428. Further, Plaintiffs' motion comes in response to this Court's *sua sponte* Article III ruling. Thus, while Plaintiffs may have "known this information [newly asserted in the PSAC] for years" as Defendants claim, (ECF No. 39 at 12), they only knew of the deficiencies in their FAC after the Court's Order. Thus, the Court does not find Plaintiffs' delay to be undue as to justify denying their motion.

### B. Any prejudice to Defendants is minimal

Second, Defendants argue that they will be prejudiced if the Court grants Plaintiffs' motion. (ECF No. 39 at 13–14.) Prejudice is a particular concern in assessing post-judgment Rule 15(a) motions, they argue, since "the interest in finality that attaches to every judgment must of necessity weigh in the exercise of the district court's discretion." *Laber*, 438 F.3d at 433 (Wilkinson, J., concurring). After a court enters judgment for a defendant, "defendants have an interest in the finality of the judgment in their favor and would be prejudiced if they were unable to rely on such a judgment." *Logar v. W. Va. Univ. Bd. of Governors*, No. CIV.A. 1:10CV201, 2012 WL 243692, at *8 (N.D. W. Va. Jan. 25, 2012), *aff'd*, 493 F. App'x 460 (4th Cir. 2012).

However, as the Court discussed in Part II.A, *supra*, no final judgment was entered in this case. Unlike in *Logar*, where plaintiffs' claims were dismissed on summary judgment, this Court dismissed Plaintiffs' claims for without prejudice for lack of standing. Further, Plaintiffs bring no new claims or theories for recovery in their PSAC, but instead merely allege additional facts in an attempt to establish an injury in fact. Thus, the Court finds that any prejudice to Defendants is minimal and outweighed by the Court's interests in judicial economy, disposing with the case on its merits, and avoiding the inefficiencies that could ensue were Plaintiffs to refile their case rather than reinstating this one.

### C. Plaintiffs' PSAC is not futile

Finally, Defendants argue that Plaintiffs' PSAC is futile because (1) Plaintiffs' PSAC still does not allege a cognizable injury for purposes of standing under Article III, (2) Plaintiffs

do not have standing to represent the purported class; and (3) Plaintiffs' PSAC would not survive a 12(b)(6) motion to dismiss.

i.    <u>Plaintiff's PSAC states a concrete and particularized injury</u>

The jurisdiction of a federal court is limited to cases and controversies under Article III of the United States Constitution. U.S. Const. art. III, § 2. To establish constitutional standing, a plaintiff must plausibly allege that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs bear the burden of establishing these elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "Where, as here, a case is at the pleading stage, [Plaintiffs] must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

To establish an injury-in-fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court has held that when a party has "set forth no specific facts demonstrating" the alleged injury, such allegations "are necessarily conjectural." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412, 420 (2013) (finding that plaintiffs did not have standing when they "present[ed] no concrete evidence to substantiate their fears" and could "only speculate" as to whether an injury might have occurred or will occur in the future).

This Court dismissed Plaintiffs' FAC for lack of standing. *Hill*, 2021 WL 1026740, at *2–3. Specifically, this Court found that Plaintiffs failed to set forth specific facts

10

demonstrating (1) Defendants' sheets were of lower quality, softness, or comfort than sheets Plaintiffs deem to accurately display corresponding thread counts, (2) Plaintiffs paid more for Defendants sheets than they would have for comparable sheets, or (3) Defendants' sheets actually had thread counts that were lower than advertised. *Id.* Thus, Plaintiffs had failed to allege any concrete and particularized injury. *Id.*

Plaintiffs have rectified this shortcoming in their PSAC. Unlike in their earlier complaint, Plaintiffs specifically allege that Defendants' sheets have been tested by the Texas Department of Agriculture and a New York quality assurance and compliance textile testing lab and were determined to have much lower thread counts than Defendants claimed that they had. (*See* ECF No. 36-1 ¶ 7.) Plaintiffs additionally allege that the sheets purchased by Named Plaintiffs have also been independently tested, and that those tests revealed that the "true thread count" of each set of sheets is less than one-third the represented thread count. (*Id.* ¶¶ 10–13.) Thus, Plaintiffs' allegation that Defendants' sheets were misleadingly labeled is no longer conjecture but instead is rooted in specific factual allegations. Plaintiffs now have a concrete, particularized injury; namely, they expended money for products they "would not have purchased" if they had known of the lower thread count. (*Id.* ¶¶ 42, 113, 200, 336.) This is a tangible injury that was allegedly caused by Defendants' misrepresentation and can be redressed through money damages. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) ("Plaintiffs claim that, as a result of defendants' actions, . . . they would not have purchased their homes had defendants made the disclosures allegedly required by law. . . . This is a quintessential injury-in-fact."); *see also Sierra Club v. Morton*, 405 U.S. 727, 733 (1972)

Case 1:19-cv-00983-LCB-JLW   Document 42   Filed 01/27/22   Page 11 of 35

("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing").

ii.    <u>Plaintiffs have standing to represent the putative class members</u>

Defendants next argue that Plaintiffs' motion is futile because, while Named Plaintiffs may have standing in their own right, they lack standing to represent the class. (ECF Nos. 39 at 18; *see* 30 at 5–18.) Citing cases from select district courts outside this circuit, Defendants contend that class members who bought different products from Named Plaintiffs have different injuries, and therefore cannot be represented by Named Plaintiffs under Article III. (ECF No. 30 at 6 (citing *Kisting v. Gregg Appliances, Inc.*, No. 16-CV-141, 2016 WL 5875007, at *3 (E.D. Wis. Oct. 7, 2016)).)

Defendants' position is inconsistent with Supreme Court and Fourth Circuit precedent. While "[t]he strictures of Article III standing are no less important in the context of class actions," *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir.), *cert. denied*, 141 S. Ct. 373 (2020), "[t]hat a suit may be a class action . . . adds nothing to the question of standing," *Lewis v. Casey*, 518 U.S. 343, 357 (1996). The Fourth Circuit has consistently held that to assess standing in a class action suit, "we analyze standing based on the allegations of personal injury made by the named plaintiffs." *Baehr*, 953 F.3d at 252 (quoting *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018)); *see Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017); *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011). If named plaintiffs lack standing, the class lacks standing. *Baehr*, 953 F.3d at 252–53 ("A putative class thus cannot establish Article III standing without a sufficient allegation of harm to the named plaintiff in

particular.").   Once the named plaintiff has established standing, however, a case or controversy exists under Article III.  *Id.*

This does not mean that Article III imposes no restrictions on class action suits.  One such restriction is that "[e]very class member must have Article III standing in order to recover individual damages."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021); *see also Allee v. Medrano*, 416 U.S. 802, 829 (1974) (Berger, C.J., concurring in the result in part and dissenting in part) ("Standing cannot be acquired through the back door of a class action.").  Another is that "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."  *TransUnion*, 141 S. Ct. at 2208.  Finally, a class action may only challenge conduct that injured the named plaintiffs— named plaintiffs lack standing to challenge *conduct* that did not cause their injury.  *See Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (holding that an injured plaintiff has standing only to challenge putatively "injurious conduct of one kind" cannot litigate "conduct of another kind, although similar, to which he has not been subject") (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–67 (1972)).

The present case, however, is not an unusual one that requires lengthy analysis.  As discussed in detail above, Plaintiffs challenge Defendants' alleged practice of advertising their sheets at higher thread counts than the sheets actually possess.  This practice allegedly caused Named Plaintiffs to suffer a concrete and particularized injury by inducing them to spend money they otherwise would not have spent.  And this injury can be redressed by awarding monetary damages.  As defined in Plaintiffs' PSAC, every member of the proposed classes suffered this same injury caused by this same conduct: each was induced to purchase sheets

Case 1:19-cv-00983-LCB-JLW   Document 42   Filed 01/27/22   Page 13 of 35

by allegedly inflated thread counts.[4]  (ECF No. 36-1 ¶ 115.)  The mere fact that the products purchased by class members had different names and were of different sizes is immaterial, since the alleged injury and challenged conduct is uniform across the classes.

The Court finds that Plaintiffs have sufficiently alleged facts to support standing and their motion is not futile for want thereof.  To the extent Defendants argue that individual issues concerning product labels, types, and thread counts will predominate in this suit, or that Named Plaintiffs' claims are not typical of class members' claims, those arguments are properly raised at the class certification stage.  *Van Buren v. Walmart, Inc.*, No. DKC 19-0911, 2020 WL 1064823, at *3 (D. Md. Mar. 5, 2020), *aff'd*, 855 F. App'x 156 (4th Cir. 2021).  Defendants may also continue to challenge Plaintiffs' standing in future stages of the litigation.  *See TransUnion*, 141 S. Ct. at 2208 ("Plaintiffs must maintain their personal interest in the dispute at all stages of litigation.").

iii.  <u>Plaintiffs' PSAC would survive a motion to dismiss</u>

Finally, Defendants argue that Plaintiffs' motion is futile because it would not survive a 12(b)(6) motion to dismiss for failure to state a claim.  (ECF No. 39 at 18; *see* ECF Nos. 19; 25.)

A plaintiff's request to amend a complaint is futile if the proposed amended complaint could not satisfy the appropriate requirements of the Federal Rules of Civil Procedure, including Rule 12(b)(6).  *See Wilson*, 525 F.3d at 376.  Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

---

[4] While Plaintiffs' FAC included class members who purchased either bedding or linens, (ECF No. 15 ¶ 98), Plaintiffs appear in their PSAC to limit the classes to customers who purchased bedding sheets, (ECF No. 36-1 ¶ 115).

14

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering whether a plaintiff has stated a claim, a court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

Here, Defendants argue: (1) Plaintiffs' MMWA claim fails because advertised thread counts do not constitute written warranties; (2) Plaintiffs' breach of implied warranty claims fail because they have not alleged that the sheets were unfit for ordinary use; (3) Plaintiffs' breach express warranty claims fail because they did not give Defendants notice of the breach within a "reasonable" time; (4) Plaintiffs' fraud-based claims fail because they failed to plead the time, place, and contents of the alleged fraudulent representations with particularity against individual Defendants; (5) Plaintiffs' claims under N.C. Gen. Stat. § 75-1.1 fail because they are beyond the scope of that law; (6) Plaintiffs' negligent misrepresentation claims are barred by the economic loss doctrine; (7) Plaintiffs' claims under Massachusetts Consumer Protection Act fail because they did not comply with the law's notice requirement; and (8) Plaintiffs' unjust enrichment claims are duplicative. (ECF No. 19 at 5–22.)

1.    Magnuson-Moss Warranty Act ("MMWA") (Count I)

The MMWA provides plaintiffs with a remedy against a defendant who fails to comply with "a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). A "written warranty" means:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or

Case 1:19-cv-00983-LCB-JLW   Document 42   Filed 01/27/22   Page 15 of 35

workmanship is defect free or will meet a specified level of performance over a specified period of time.

§ 2301(6)(A). An "implied warranty" is defined as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." § 2301(7).

Courts generally distinguished between "written warranties" and mere "product descriptions." *See In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Prac. Litig.*, No. 1:16MD2743 (AJT/TRJ), 2017 WL 2911681, at *17 (E.D. Va. July 7, 2017); *Perez v. Monster Inc.*, 149 F. Supp. 3d 1176, 1183 (N.D. Cal. 2016); *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 898 (C.D. Cal. 2013); *see also In re Shop-Vac Mktg. & Sales Pracs. Litig.*, 964 F. Supp. 2d 355, 361 (M.D. Pa. 2013) (finding claims about a vacuum's horsepower and tank capacity did not constitute a written warranty); *cf. Dorsey v. Rockhard Lab'ys, LLC*, No. CV 13-07557 DDP RZX, 2014 WL 4678969, at *9 (C.D. Cal. Sept. 19, 2014) (finding that "Sexual Performance Enhancer for Men" and "Fast & Effective" were claims that "relate to the nature of the product and are not mere product descriptions"). Promises about a product's quality or character do not constitute a "written warranty" unless they promise "a <u>specified level</u> of performance over a <u>specified period</u> of time." *Hawes v. Macy's Inc.*, 346 F. Supp. 3d 1086, 1092 (S.D. Ohio 2018). This interpretation is consistent with the Federal Trade Commission's interpretation of the MMWA, which provides that that certain product representations, such as "energy efficiency ratings" and clothing "care labeling" are product descriptions rather than written warranties because "a written promise of a specified level of performance must relate to a specified period of time in order to be considered a 'written warranty.'" 16 C.F.R. § 700.3(a). "A product information disclosure without a specified time period to which the

16

disclosure relates is therefore not a written warranty." *Id.*; *see Viggiano*, 944 F. Supp. 2d at 898 n.45; *Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2007 WL 2600841, at *5 (W.D. Wash. Sept. 10, 2007).

Two courts have previously determined that a thread count guarantee is a not a "written warranty." *See Hawes*, 346 F. Supp. 3d at 1092; *Beautiful Home Textiles (USA) v. Burlington Coat Factory Warehouse Corp.*, 2014 WL 4054240, at *12 (S.D.N.Y. Aug. 15, 2014). "Even if thread count provides a certain character and quality over time," they held, "the thread count listed on the bedsheets does not list a <u>specified level</u> of performance over a <u>specified period</u> of time." *Hawes*, 346 F. Supp. 3d at 1092; *see Beautiful Home Textiles*, 2014 WL 4054240, at *12.

Here, a promised thread count may guarantee a specified level of performance. Accepting all alleged facts as true and making all inferences in plaintiffs favor, thread count is considered by sellers and consumers alike as an objective measure of softness and comfort during sleep and may be the closest thing bedsheets have to an objective promise of performance. (*See* ECF No. 36-1 ¶ 19 n.1 ("[T]he higher the thread count, the denser & smoother the sheet will feel." (quoting Macy's, *Meet the Sheets*, https://www.macys.com/ce/splash/how-to-choose-bed-sheets/index (last visited Dec. 15, 2021))).) Even if this were true, however, Plaintiffs have not alleged that Defendants made any guarantees of performance over a specified period of time. Thus, the Court finds that Plaintiffs have not sufficiently alleged the existence of a "written warranty" under the MMWA.

On the other hand, Plaintiffs have stated a claim for breach of an implied warranty under state law, as determined in Section III.C.iii.2, *infra*. Thus, Plaintiffs have likewise stated a claim under the MMWA. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir.

17

2008) ("[T]his court's disposition of the state law warranty claims determines the disposition of the [MMWA] claims.").

Therefore, Plaintiffs' motion to amend will be granted as to their MMWA claims for breach of an implied warranty but denied as to any claim for breach of a written warranty under the MMWA.

### 2. Breach of implied warranty of merchantability (Count II)

Under the Uniform Commercial Code ("UCC"), "[g]oods to be merchantable must be at least such as . . . (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to any promises or affirmations of fact made on the container or label." Mass. Gen. Laws ch. 106, § 2A-212(2)(e)–(f); Mo. Rev. Stat. § 400.2A-212(2)(e)–(f); N.C. Gen. Stat. § 25-2A-212(2)(e)–(f); *see* Cal. Com. Code § 2314(2)(e)–(f) (West); N.H. Rev. Stat. Ann. § 382-A:2-314(e)–(f) (West).[5]  Courts in the relevant states have found breaches of the implied warranty of merchantability where cans of tuna were underfilled and weighed substantially less than stated on the label, *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014); where "all natural" almond milk contained artificial ingredients, *Vass v. Blue Diamond Growers*, No. CV 14-13610-IT, 2015 WL 9901715, at *9 (D. Mass. Aug. 11, 2015), *report and recommendation adopted*, No. 14-CV-13610-IT, 2016 WL 1275030 (D. Mass. Mar. 31, 2016); and where a deodorant can had an insufficient warning on its label, *Reid v. Eckerds Drugs, Inc.*, 253 S.E.2d 344, 349–50 (N.C. Ct. App. 1979).

---

[5] The parties dispute which state's law governs Plaintiffs' implied warranty claims. (ECF Nos. 19 at 8–9; 24 at 5–7; 25 at 2–4.)  However, neither party has identified an actual conflict of laws in this case. (*See* ECF Nos. 24 at 7–11 (arguing that Plaintiffs stated a claim under the UCC as adopted by each state); 25 at 4 ("Plaintiffs' breach-of-warranty claims must be dismissed regardless of which state's law applies.")).  Thus, the Court need not reach the choice of law issue at this stage.

Here, Plaintiffs allege that Defendants' sheets were not adequately labeled and did not conform to the affirmations of fact made on the labels, in that the sheets did not have the thread counts promised on the labels. These allegations appear to fit squarely within the definitions of merchantable contained in Sections 2-212 (e) and (f) of the UCC quoted above. Thus, Plaintiffs have stated claims of breach of the implied warranty of merchantability.

Defendants argue that *Hawes v. Macy's* is on point. (ECF Nos. 19 at 10–11 (citing *Hawes*, 346 F. Supp. 3d at 1093; 25 at 4–5). In *Hawes*, a parallel case in which Plaintiffs sued Macy's over the same sheets at issue in this case, the U.S. District Court for the Southern District of Ohio dismissed Plaintiffs' claims for breach of an implied warranty of merchantability. *Hawes*, 346 F. Supp. 3d at 1093. There, however, Plaintiffs argued that the sheets were "unfit for the ordinary purpose for which they are used." *Id.* The court therefore analyzed Plaintiffs' claims under UCC § 2-212(c), which requires products to "satisfy a minimum level of quality," and found the complaint lacking. *Id.* (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009); *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011)). Here, Plaintiffs argue that Defendants' products do not satisfy UCC § 2-212(e) or (f). Thus, while the factual allegations in the two cases may be similar, Plaintiffs' divergent legal theories require the Court's analysis, and ultimate conclusion, to differ from the analysis and conclusion in *Hawes*.

Finally, Defendants argue that Named Plaintiff Hawes's implied warranty claim is barred because she failed to notify Defendants of the defect within one year of sale as required by California law. (ECF No. 19 at 11 n.8 (citing Cal. Civ. Code § 1791.1.)) However, "[t]here is nothing that suggests a requirement that the purchaser discover and report to the seller a *latent* defect within that time period." *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 295–96

19

(Cal. Ct. App. 2009) (emphasis added) (holding that interpreting the one-year provision as a statute of limitations would be inconsistent with the statute's "legislative intent to *expand* consumer protections and remedies"). Here, Plaintiffs have alleged that the sheets' actual thread count was unobservable to the naked eye and only discovered after independently tested by a textile expert. (ECF No. 36-1 ¶ 10, 244–45.) Thus, the Court finds that these allegations are sufficient to withstand a motion to dismiss on this claim.

Plaintiff's motion will be granted as to this claim.

### 3. Breach of an express warranty (Count III)

Under the UCC, claims for breach of express warranty must be brought "within a reasonable time after he or she discovers or should have discovered any breach." Cal. Com. Code § 2607(3)(A) (West); *see* Mass. Gen. Laws ch. 106, § 2-607(3)(a); Mo. Rev. Stat. § 400.2-607(3)(a); N.H. Rev. Stat. Ann. § 382-A:2-607(3)(a) (West); N.C. Gen. Stat. § 25-2-607(3)(a). Whether the time between discovery and suit is "reasonable" is fact and case specific. In one case, three months was too long to wait; in another, three years was still reasonable. *Compare P & F Construction Corp. v. Friend Lumber Corp.*, 575 N.E.2d 61, 64 (Mass. Ct. App. 1991) (finding that "three and one half months is not soon enough" where a construction company notified a door manufacturer of readily apparent flaws after payment was past due), *with Maybank v. S. S. Kresge Co.*, 273 S.E.2d 681, 685 (N.C. 1981) ("While three years might conceivably be a per se unreasonable delay in a commercial context, differing considerations applicable in retail situations may mean that a delay of three years by a consumer in giving notice to a retail seller is within the bounds of a reasonable time.") For this reason, reasonable delay is generally a question of fact for the jury. *See Gober v. Revlon, Inc.*, 317 F.2d 47, 52 (4th Cir. 1963) (applying

20

California law); *Delano Growers' Coop. Winery v. Supreme Wine Co.*, 473 N.E.2d 1066, 1072 (Mass. 1985); *Rowe Int'l, Inc. v. J-B Enterprises, Inc.*, 647 F.2d 830, 833 (8th Cir. 1981) (applying Missouri law); *Dudley v. Bus. Exp., Inc.*, 882 F. Supp. 199, 211 (D.N.H. 1994) (citing *Russell v. First National Stores, Inc.*, 79 A.2d 573, 577 (N.H. 1951)); *Maybank*, 273 S.E.2d at 684 n.1.

Here, Named Plaintiffs each notified Defendants of the defects roughly two years after purchase. While the sheets' alleged defect was not readily apparent at the time of purchase, Plaintiffs have failed to allege when the defects were detected. Defendants are correct that "Plaintiffs should not be allowed to benefit from any ambiguity created by their own failure to disclose material facts." (ECF No. 25 at 6.) Nevertheless, the Court cannot find that Plaintiffs' delays were unreasonable as a matter of law so as to render their PSAC futile. Two years is within the range found reasonable by at least one state's supreme court in consumer transactions, and Defendants alleged concealment of the defect and other factors prevent this Court from determining that Plaintiffs' delays are unreasonable as a matter of law at this early stage in the litigation.

Thus, Plaintiffs' motion will be granted as to these claims.

### 4. Fraud based claims (Counts IV through XII)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) applies to any cause of action "that has the substance of fraud," not only those labelled as fraud claims. *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 705 (4th Cir. 2018) (quoting *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008)). This heightened pleading standard requires the plaintiff to "at a minimum, describe the time, place,

21

and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (internal quotations omitted). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud.'" *Wilson*, 525 F.3d at 379 (quoting *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)). Rule 9(b) "serves several policy objectives," *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 725 (M.D.N.C. 2015), including "to provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation," *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013). Ultimately, the Rule's purpose is to satisfy the court "(1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Defendants argue that nine of Plaintiffs' thirteen claims sound in fraud, and Plaintiffs do not dispute this characterization. (ECF Nos. 19 at 14; 24 at 13–16.) Defendants further argue that these claims were not plead with sufficient particularity because Plaintiffs (1) failed to identify which Defendant is responsible for the alleged misrepresentations, and (2) base too many allegations on "information and belief." (ECF No. 19 at 15–17.) Thus, Defendants argue, Plaintiffs' request to assert these claims in their PSAC is futile. (ECF No. 39 at 18.)

The Court, however, finds, that the PSAC does satisfy Rule 9(b). With respect to Defendants' first argument, Plaintiffs allege that the sheets in question "were imported and

labeled by AQ Textiles," and that "AQ Textiles represented and sold them to consumers as if they were of the higher quality represented on the labels." (ECF No. 36-1 ¶¶ 38, 44.) With respect to Defendants' second argument, it appears that Plaintiffs' allegations are no longer based solely on information and belief. Instead, Plaintiffs have submitted prediscovery evidence, including the content of the alleged misrepresentations (the "what"), as attachments to the PSAC. (*Id.* at 87; *see id.* ¶ 51.) And the "when" and "where" are also based on prediscovery evidence, such as Named Plaintiffs' recollections of the times and places they purchased the sheets. (*See id.* ¶¶ 36, 49, 54, 58.) Finally, Plaintiffs allege that they gave AQ money in exchange for the sheets. (*Id.* ¶¶ 37, 52, 56, 60.) The Court is therefore satisfied that the allegations are supported by prediscovery evidence and put Defendants on notice of the particular circumstances for which they will need to prepare a defense for trial.

Plaintiffs' motion will be granted as to these claims except as otherwise addressed below.

### 5. N.C. Unfair and Deceptive Trade Practices Act (Count VI)

Defendants next argue that Plaintiffs' claims are beyond the scope of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"). (ECF No. 19 at 17–18.)

The NCUDTPA declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practice in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). To state a claim, a plaintiff must allege (1) an unfair or deceptive act or practice; (2) in or affecting commerce; (3) which proximately caused injury to the plaintiff or his business." *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 845 F.3d 104, 109 (4th Cir. 2016) (citing *Walker v. Fleetwood Homes of N.C., Inc.*, 653 S.E.2d 393, 399 (N.C.

2007)).  The statute's plain language is broad in scope and applies to all acts or practices "in or affecting commerce," including "all business activities, however denominated."  § 75-1.1(a)–(b).  The General Assembly removed language limiting that scope to business "within this state" in 1977, indicating its desire to make the law "applicable 'to the full extent permissible under conflicts of law principles and the Constitution.'"  *Hardee's Food Sys., Inc. v. Beardmore*, No. 5:96–CV–508–BR(2), 1997 WL 33825259, at *3 (E.D.N.C. June 6, 1997) (quoting *American Rockwool, Inc. v. Owens–Corning Fiberglass*, 640 F. Supp. 1411, 1427 (E.D.N.C. 1986)).

Relying on *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C. 1987), Defendants argue that the NCUDTPA only reaches cases where the plaintiff has shown an in-state injury.  (ECF No. 19 at 17–18.)  In *'In' Porters*, a court in this District addressed "whether section 75-1.1 is available to a foreign plaintiff suing a resident defendant over alleged foreign injuries having a negligible effect, if any, on North Carolina trade or commerce."  *'In' Porters*, 633 F. Supp. at 501.  Ultimately, the court held that the NCUDTPA could not reach the facts of that case.  *Id.* at 502–03.

Since *'In' Porters*, other federal district courts in North Carolina have distinguished its holding.  *See Hometown Pub., LLC v. Kidsville News!, Inc.*, No. 5:14-CV-00076-FL, 2014 WL 7499450, at *3 (E.D.N.C. Oct. 3, 2014); *Verona v. U.S. Bancorp*, No. 7:09-CV-057-BR, 2011 WL 1252935, at *15 (E.D.N.C. Mar. 29, 2011); *Ada Liss Grp. v. Sara Lee Corp.*, No. 06CV610, 2010 WL 3910433, *12 (M.D.N.C. April 27, 2010); *Hardee's*, 1997 WL 33825259, at *3.  These courts limit *'In' Porter* to cases concerning "exclusively foreign misconduct with damages to the plaintiff's exclusively foreign operations."  *Verona*, 2011 WL 1252935, at *14.

24

This Court likewise finds *'In' Porters* distinguishable. *'In' Porters'* narrow interpretation of the NCUDTPA was based on concerns about personal jurisdiction under North Carolina's long arm statute, consistency of the NCUDTPA with federal antitrust law, and potential violations of the Commerce and Due Process Clauses of the U.S. Constitution. *'In' Porters*, 633 F. Supp. at 501–02. These concerns are not present in this case. There is no personal jurisdiction concern because Defendant AQ is a North Carolina corporation. *See* N.C. Gen. Stat. 1-75.4(1)(c). Since Plaintiffs are U.S. residents, applying the NCUDTPA will also not create the concerning "anomaly" presented in *'In' Porters* that could allow state law to reach farther than federal law in regulating international trade. *See In' Porters*, 633 F. Supp. at 502 n. 8.

Further, while statutes should be construed to avoid constitutional problems, *see Boumediene v. Bush*, 553 U.S. 723, 787 (2008), Defendants have not shown how applying the NCUDTPA in this case would violate the Commerce Clause. *See ITCO Corp. v. Michelin Tire Corp., Com. Div.*, 722 F.2d 42, 48 n. 9 (4th Cir. 1983) ("Absent some reason to believe that the [NCUDTPA] is an attempt directly to regulate interstate commerce . . . we perceive no cause for constitutional concern."). Unlike in *'In' Porter*, Plaintiffs here invoke the NCUDTPA to regulate Defendant AQ's alleged mislabeling of their products—conduct that appears to have occurred in whole or in part at AQ's headquarters in North Carolina. (ECF No. 36-1 ¶¶ 25–28, 61.) Thus, this is not a case where state law "targets conduct that occurs entirely outside [North Carolina's] borders." *See Ass'n for Accessible Medicines v. Frosh*, 887 F.3d 664, 671 (4th Cir. 2018); *see also Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1029 (9th Cir. 2021) ("A

state law is not impermissibly extraterritorial unless it directly regulates conduct that is wholly out of state.").

Lastly, Defendants have not shown how application of the NCUDTPA would violate the Due Process Clause. Application of state law may be unconstitutional if a lack of "significant contact or significant aggregation of contacts" between the state and case "creating state interests" renders application of the law "arbitrary" or "fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981) (pl. opinion). Here, North Carolina has significant contacts with Defendant AQ in that AQ is a North Carolina corporation and engaged in allegedly proscribed conduct in North Carolina. *See id.* at 314 n. 19 ("Numerous cases have applied the law of a jurisdiction other than the situs of the injury where there existed some other link between that jurisdiction and the occurrence."). Application of North Carolina law to a North Carolina corporation is not arbitrary or unfair. Consequently, the Court joins the cases cited above and interprets the NCUDTPA broadly to reach some cases where the injury occurred outside of North Carolina.

Defendants alternatively argue that Plaintiffs have failed to adequately allege that Defendants' misconduct occurred in North Carolina. Plaintiffs have alleged:

25. Defendant AQ Textiles is a North Carolina LLC with it principal place of business and registered offices located in Greensboro, North Carolina 27410.

26. Defendants' improper conduct set forth herein occurred in this District or was conceived of and executed from this District in whole or in part.

27. Defendants' decisions to engage in the improper conduct set forth herein were made in this District.

28. Further, Defendants' bedding sheets at issue were advertised, marketed, sold and/or distributed in this District.

26

. . .

70.    The sheets at issue were manufactured by Creative Textiles and imported, labeled, and sold by AQ Textiles. . . .

(ECF No. 36-1 ¶¶ 25–28, 70.)   These allegations are sufficient to create the reasonable inference that Defendant AQ engaged in the alleged misconduct—labeling sheets with misleadingly high thread counts—in North Carolina.

Therefore, the Court finds that the facts of this case fall within the broad scope of the NCUDTPA.  The Court makes no finding as to whether the NCUDTPA applies to this case under North Carolina's choice of law rules, as that issue has not been raised by Defendants nor briefed by the parties.  Instead, the Court merely finds that *'In' Porter* does not render Plaintiffs' motion to assert NCUDTPA claims in their PSAC futile.

6.    Negligent misrepresentation (Count IV) and economic loss

Defendants next argue that Plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine.  (ECF No. 19 at 18–20.)  Plaintiffs argue that their claims fall within an exception to the economic loss rule under North Carolina law.  (ECF No. 24 at 18 (citing *Rountree v. Chowan Cty.*, 796 S.E.2d 827, 830 (N.C. Ct. App. 2017)).)  Defendants argue that North Carolina law does not apply to this case.  (*See* ECF No. 25 at 10.)

A federal court sitting in diversity or exercising supplemental jurisdiction over state law claims must apply the substantive law of the forum state, including the form state's choice of law rules.  *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 623–24 (4th Cir. 1999); *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  North Carolina courts follow the First Restatement of Conflict of Laws

in actions sounding in tort and apply the tort law of the state where the injury occurred. *See SciGrip, Inc. v. Osae*, 838 S.E.2d 334, 343 (N.C. 2020); *Boudreau v. Baughman*, 368 S.E.2d 849, 854 (N.C. 1988). Here, Defendants' alleged negligent misrepresentation caused injury where Plaintiffs purchased the sheets: California, Massachusetts, Missouri, and New Hampshire. Thus, Plaintiffs claims are governed by the substantive laws of these states. *See SciGrip*, 838 S.E.2d at 344 (noting that "the lex loci test can be difficult in some circumstances, including cases involving events that occur in and entities associated with multiple jurisdictions.").

All four states recognize the economic loss rule, which limits "remedies for economic loss sustained by reason of damage to or defects in products sold . . . to those under the warranty provisions of the UCC." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 130–31 (Mo. 2010) (en banc); *see Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 272 (Cal. 2004); *Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70, 89 (D. Mass. 1998) (citing *Jacobs v. Yamaha Motor Corp., U.S.A.*, 649 N.E.2d 758, 763 n.5 (Mass. 1995)); *Wyle v. Lees*, 33 A.3d 1187, 1190–91 (N.H. 2011). However, the states apply the rule differently to negligent misrepresentation claims. The Eighth Circuit predicted that "the Supreme Court of Missouri, if confronted with the issue, would hold that the economic loss doctrine bars negligent misrepresentation claims." *Bruce Martin Const., Inc. v. CTB, Inc.*, 735 F.3d 750, 752 (8th Cir. 2013) (citing *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 904–05 (8th Cir. 2013)). In Massachusetts, on the other hand, "the economic-loss doctrine does not apply to claims of negligent misrepresentation." *Stokes v. Wells Fargo Bank, N.A.*, 37 F. Supp. 3d 525, 535 n.6 (D. Mass. 2014); *Passatempo v. McMenimen*, 960 N.E.2d 275, 294 (Mass. 2012) ("[The economic loss doctrine] does not apply to 'pecuniary loss incurred as a result of an actionable

28

misrepresentation.'" (quoting *Nota Constr. Corp. v. Keyes Assocs. Inc.*, 694 N.E.2d 401 (Mass. Ct. App. 1998))); *see also Softub, Inc. v. Mundial, Inc.*, 53 F. Supp. 3d 235, 260 (D. Mass. 2014) (allowing plaintiff's negligent misrepresentation claim against manufacturer for false promises that pump was suitable for installation in portable spa tubs).[6]

    In the remaining two states, it appears that a negligent misrepresentation claim is barred if the misrepresentation constituted a breach of contract but is not barred if the misrepresentation was independent of the contract terms and instead induced contract formation. *Compare Robinson Helicopter*, 102 P.3d at 274 (allowing an intentional misrepresentation claim where defendant falsified certificates of performance, inducing plaintiff's purchase of its products), *and Banks v. R.C. Bigelow, Inc.*, 536 F. Supp. 3d 640, 646 (C.D. Cal. 2021) (allowing a claim that alleged the label, "manufactured in the USA," was false and induced plaintiffs' purchase), *and Wyle*, 33 A.3d at 1192 (allowing a claim where defendant's misrepresentation that a property was licensed for immediate occupancy induced plaintiff's purchase), *with Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 955 (S.D. Cal. 2021) (barring plaintiff's negligent misrepresentation claims that "allege nothing more than the product it purchased . . . did not live up to the expectations that had been created by Defendant's advertising"), *and Wyle*, 33 A.3d at 1192 (noting that economic loss

---

[6] Defendants cite *Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70 (D. Mass. 1998), which applied the economic loss rule to a negligent misrepresentation claim after finding in 1998 that "Massachusetts has not expressly decided whether the economic loss doctrine bars claims of negligent misrepresentation where the damages result from a defective product." *Id.* at 95. State courts have since repeated that negligent misrepresentation is categorically excepted from the economic loss rule, *see Passatempo*, 960 N.E.2d at 294, and the U.S. District Court in Massachusetts has allowed negligent misrepresentation claims related to defective products to proceed, *Softub*, 53 F. Supp. 3d at 260.

rule bars claims that "merely relate to a breached promise to perform the terms of the contract or attempt to recharacterize a breach of contract claim as a negligent misrepresentation").

Here, Defendants' alleged misrepresentations go to the nature and performance of the sheets. Plaintiffs repeatedly allege that Defendants' thread count claims were not mere characterizations of the sheets, but product descriptions that created warranties. Thus, this is not a case where alleged promises are independent of the purchase, such as a promise that a product is properly licensed or "manufactured in the USA." In such a case, the plaintiff has received the correct product, but was persuaded to purchase the product by the defendant's misrepresentations. By contrast, Plaintiffs in this case allege they did not receive the products they purchased—luxury sheets with the advertised thread counts. Thus, their California and New Hampshire negligent misrepresentation claims merely restate their breach of warranty claims and are barred by the economic loss doctrine.

Plaintiffs' motion will therefore be granted as to the negligent misrepresentation claims brought by Plaintiffs who allegedly suffered an injury in Massachusetts. Plaintiffs' request to assert remaining negligent misrepresentation claims will be denied as futile.

7.    Massachusetts Consumer Protection Act ("MCPA") (Count XI)

Defendants next argue that Plaintiffs' request to assert MCPA claims in their PSAC is futile because Plaintiffs did not provide Defendants with sufficient notice. (ECF No. 19 at 20–21.)

The MCPA provides that "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to

any prospective respondent." Mass. Gen. Laws ch. 93A, § 9(3). "The statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'" *Young v. Wells Fargo Bank, N.A.*, 828 F.3d 26, 34 (1st Cir. 2016) (quoting *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975)). The demand letter "is a prerequisite to suit and as a special element must be alleged and proved." *Baldassari v. Pub. Fin. Tr.*, 337 N.E.2d 701, 707 (Mass. 1975).

In the class action context, proper demand made by one plaintiff satisfies this requirement for "others similarly situated," so long as the letter (1) identifies him as the claimant, (2) reasonably describes the act or practice being challenged, and (3) reasonably describes his injury. *Id.* In *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342 (D. Mass. 2011), the U.S. District Court for the District of Massachusetts held that one named plaintiff's demand put defendant on sufficient notice such that other named plaintiffs could join suit without issuing additional demands. *Id.* at 354.

"One function of the demand letter is to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct." *Casavant v. Norwegian Cruise Line, Ltd.*, 952 N.E.2d 908, 913 (Mass. 2011) (internal quotations omitted); *see also Young*, 828 F.3d at 34 ("The demand letter requirement puts the defendant on notice of the plaintiff's claim, thereby encouraging negotiation and settlement."). Notice of a plaintiff's claim satisfies this requirement only if it "describes the injuries in sufficient detail to permit the defendant reasonably to ascertain its exposure." *Richards v. Arteva Specialties S.A.R.L.*, 850 N.E.2d 1068, 1076 (Mass. Ct. App. 2006) (internal quotation omitted). Thus, "[i]n order to qualify as a written demand under Chapter 93A, the letter must define the injury suffered and

the relief sought and *refer to the nature of the claim as one under the consumer protection act.*" *In re Bushay*, 327 B.R. 695, 702 (B.A.P. 1st Cir. 2005) (emphasis added), *aff'd*, 187 F. App'x 17 (1st Cir. 2006).

Here, Plaintiffs allege the following:

310. Plaintiff Morrison provided Defendants with notice of her and the Classes' claims by letter dated November 27, 2018.

311. Plaintiff Hawes provided Defendants with notice of her and the Classes' claims by letter on or around May 17, 2019.

312. Plaintiffs Chiaraluce and Fontaine provided Defendants with notice of their and the Classes' claims by letter on or around December 5, 2019.

(ECF No. 36-1 ¶¶ 310–312.) Plaintiffs first raised their MCPA claim in their FAC, filed on December 12, 2019. Thus, only Plaintiff Hawes's letter was mailed or delivered at least thirty days before Plaintiffs filed their MCPA claim.[7]

Plaintiffs argue that Hawes's demand was sufficient to put Defendants on notice of other Plaintiffs' claims as well. (ECF No. 24 at 20.) However, Hawes is a citizen of California who purchased her sheets in California, and Plaintiffs have not alleged that Hawes or the sheets she purchased had any connection to Massachusetts. Thus, nothing in her demand letter would have put Defendants on notice that their alleged conduct may have violated the MCPA, nor could it have encouraged settlement of claims which Defendants did not know

---

[7] Plaintiffs do not argue that the untimeliness of Plaintiffs Chiaraluce's and Fontaine's demands have been cured by their PSAC, nor does the Court find that this amended complaint cures the defects. Plaintiffs had ample time between January 5, 2020—thirty days after Chiaraluce and Fontaine mailed their letter—and this Court's Order on March 17, 2021, to amend their complaint to cure this defect but failed to do so. After Plaintiffs' suit was dismissed by the Court, Defendants no longer had incentive to respond to the demand letter and settle the suit. Thus, the purposes of the demand requirement, including to encourage settlement and limit damages, are not served by allowing Plaintiffs to reassert their MCPA claims in their PSAC.

could be raised. Plaintiffs have therefore failed to allege that they submitted a timely demand for relief.

Accordingly, Plaintiffs' motion will be denied as to claims arising under the MCPA as futile.

8.    Unjust enrichment (Count XIII)

Finally, Defendants argue that Plaintiffs cannot maintain unjust enrichment claims alongside their warranty claims. (ECF No. 19 at 21–22.)

It is true that the relevant states' laws do not permit recovery on an unjust enrichment theory when a valid contract governs the subject matter of the parties' dispute. *See Progeny Ventures, Inc. v. W. Union Fin. Servs., Inc.*, 752 F. Supp. 2d 1127, 1135 (C.D. Cal. 2010) ("As a matter of [California] law, an unjust enrichment claim does not lie where the parties have an enforceable express contract."); *Tomasella v. Nestle USA, Inc.*, 364 F. Supp. 3d 26, 37 (D. Mass. 2019) ("[A] plaintiff who has an adequate remedy at law cannot maintain a parallel claim for unjust enrichment."); *Banner Iron Works, Inc. v. Amax Zinc Co.*, 621 F.2d 883, 889 (8th Cir. 1980) (finding of a valid contract precludes recovery on a quantum meruit theory under Missouri law); *Clapp v. Goffstown Sch. Dist.*, 977 A.2d 1021, 1025 (N.H. 2009) ("It is a well-established principle that the court ordinarily cannot allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand."); *Wireless Commc'ns, Inc. v. Epicor Software Corp.*, No. 3:10CV556-DSC, 2011 WL 90238, at *7 (W.D.N.C. Jan. 11, 2011) ("If there is a contract between the parties, the contract governs the claim and the law will not imply a contract [under a theory of unjust enrichment].").

However, at this early stage of the litigation, Plaintiffs are permitted to pursue their unjust enrichment claims in the alternative. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."). "The fact that a plaintiff cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in her complaint." *Owen v. Gen. Motors Corp.*, No. 06-4067-CV-CNKL, 2006 WL 2808632, at *2 (W.D. Mo. Sept. 28, 2006); *see, e.g., Dorney v. Pindrop Sec., Inc.,* No. 15-CV-11505-ADB, 2015 WL 5680333, at *6 (D. Mass. Sept. 25, 2015) ("[T]he existence of statutory and contractual claims does not necessitate the dismissal of [plaintiff's] equitable quantum meruit/unjust enrichment claim."); *Performance Sales & Mktg., LLC v. Lowe's Companies, Inc.*, No. 5:07CV140, 2010 WL 2294323, at *5 (W.D.N.C. June 4, 2010) ("Until the existence of an express contract is proven, [a plaintiff] is allowed to plead quantum meruit and unjust enrichment as alternative theories of recovery.").

Plaintiffs' motion will therefore be granted for these claims.

## CONCLUSION

The Court here concludes that its March 17, 2021, Order dismissing Plaintiffs' First Amended Complaint without prejudice was not a final judgment or order and was instead interlocutory. Therefore, the Court will instruct the Clerk to reinstate the case and need not vacate the former Order. The Court further concludes that Plaintiffs' proposed Second Amended Complaint does allege an injury in fact and cures the defect that led the Court to dismiss the First Amended Complaint. Plaintiffs' motion to amend their complaint would survive a motion to dismiss and is not futile, with the exception of their claims for Breach of

a Written Warranty under the MMWA (Count I); for Negligent Misrepresentation brought by Plaintiffs Morrison, Hawes, and Chiaraluce, and the California, Missouri, New Hampshire, and North Carolina classes (Count IV); and for violations of the MCPA (Count XI). Finally, the Court concludes that the following Order advances the Court's interests in judicial economy, efficiency, and disposing with cases on their merits.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that the Clerk of the United States District Court for the Middle District of North Carolina shall reinstate the case.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Amend First Amended Complaint, (ECF No. 36), is GRANTED in part and DENIED in part as follows: Plaintiffs' motion to amend is DENIED as to any claim for breach of a written warranty under the MMWA (Count I); any negligent misrepresentation claims brought by Plaintiffs Morrison, Hawes, and Chiaraluce, and the California, Missouri, New Hampshire, and North Carolina classes (Count IV); and any claims arising under the MCPA (Count XI). Plaintiffs' motion will be GRANTED as to all other claims.

This, the 27th day of January 2022.

/s/ Loretta C. Biggs.
United States District Judge